# Exhibit A

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

---------------------------------------------------------x
                                    :
                                    :
IN RE CLEARSPRING                   :
FLASH COOKIE LITIG.,                :        No. 2:10-cv-05948-GW-JCG
                                    :
                                    :
                                    :
                                    :
IN RE QUANTCAST                     :
ADVERTISING COOKIE LITIG.           :        No. 2:10-cv-05484-GW-JCG
                                    :
                                    :
---------------------------------------------------------x

-

## SETTLEMENT AGREEMENT

Representative Plaintiffs, on behalf of themselves and all Class Members, on the one hand, and, on the other hand, defendants Quantcast Corporation ("Quantcast"); Clearspring Technologies, Inc. ("Clearspring"); American Broadcasting Companies, Inc.; Demand Media, Inc.; ESPN, Inc.; Fox Entertainment Group, Inc.; Hulu, LLC; JibJab Media, Inc.; MTV Networks, a division of Viacom International Inc.; MySpace, Inc.; NBC Universal, Inc; Scribd, Inc.; Soapnet, LLC; Walt Disney Internet Group; and Warner Bros. Records Inc. ("Defendants"); and certain Defendants' affiliated Undertaking Parties (as defined below) hereby enter into this Stipulation and Agreement of Settlement ("Settlement Agreement"), subject to the approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure.

## I.   CERTAIN DEFINITIONS

The capitalized terms as used in this Settlement Agreement are defined as follows:

1.1.    Class: All persons in the United States who, during the Class Period, used any web browsing program on any device to access one or more web sites or online content controlled, operated, or sponsored by Defendants or the Undertaking Parties, or any other website employing any of Clearspring's or Quantcast's technologies involving the use of HTTP cookies ("Cookies") or local shared objects stored in Adobe Flash Player local storage ("LSOs").

1.2.    Class Counsel: the attorneys appointed by the Court as Interim Class Counsel in the Litigation, namely, KamberLaw, LLC, Scott A. Kamber and David A. Stampley of KamberLaw, LLC.

1.3.    Class Member: a Person who falls within the definition of the Class set forth in subsection 1.1 herein and who does not opt out as provided herein.

1.4.    Class Period: the period from June 1, 2008 through the Preliminary Approval Date.

1.5.    Complaints: the class action complaints on file in *Valdez, et al. v. Quantcast Corporation, et al.*, Case No. 2:10-cv-05484-GW (C.D. Cal.); *Aguirre v. Quantcast Corporation, et al.*, Case No. 2:10-cv-05716-GW (C.D. Cal.); *White, et al. v. Clearspring Technologies, Inc., et al.*, Case No. 2:10-cv-05948-GW (C.D. Cal.); *Intzekostas v. Fox Entertainment Group, Inc., Inc., et al.*, Case No. 2:10-cv-06586-GW (C.D. Cal.); *Godoy v. Quantcast Corporation*, Case No. 2:10-cv-07662-GW (C.D. Cal.); and *Rona v. Clearspring Technologies Inc.*, Case No. 2:10-cv-7786-GW (JCGx) (C.D. Cal.); and any amended and/or consolidated complaints filed in the consolidated actions captioned *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW-JCG and *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW-JCG, as of the Effective Date of this Settlement Agreement.

1.6.    Court: the United States District Court for the Central District of California.

1.7.    Defense Counsel: Defense Counsel consists of the following: (i) Michael G. Rhodes of Cooley LLP (for Clearspring); Michael H. Page of Durie Tangri LLP (for Quantcast); Jeffrey S. Jacobson of Debevoise & Plimpton LLP (for American Broadcasting Companies, Inc.; ESPN, Inc.; Fox Entertainment Group, Inc.; Hulu, LLC; JibJab Media, Inc.; MTV Networks, a division of Viacom International Inc.; MySpace, Inc.; NBC Universal, Inc.; Scribd, Inc.; Soapnet, LLC and Walt Disney Internet Group); Ian Ballon of Greenberg Traurig LLP (for Demand Media, Inc.); and Sherman Kahn of Morrison & Foerster LLP (for Warner Bros. Records Inc., an affiliate of Warner Music Inc.).

1.8.    Effective Date: the first date on which all of the events and conditions specified in subsection 8.1 of this Settlement Agreement have occurred.

1.9.    Fee Application: an application by Class Counsel to the Court for an award of Class Counsel's attorneys' fees, incentive awards to Representative Plaintiffs, and reimbursement to Class Counsel of actual expenses and costs incurred in connection with the Litigation, as well as any interest thereon.

1.10.   Fee Award: an order by the Court granting Class Counsel's Fee Application in whole or in part.

1.11.   Final: (a) if no appeal from the Judgment is filed, the expiration of the time for the filing or noticing of any appeal from the Judgment; or (b) if an appeal from the Judgment is filed, and the Judgment is affirmed or the appeal dismissed, and no petition for a writ of certiorari ("Writ Petition") with respect to the appellate court's judgment affirming the Judgment or dismissing the appeal ("Appellate Judgment") is filed, the expiration of the time for the filing of a Writ Petition; or (c) if a Writ Petition is filed and denied, the denial of the Writ Petition; or (d) if a Writ Petition is filed and granted, the final affirmance of the Appellate Judgment or final dismissal of the review proceeding initiated by the Writ Petition. Any proceeding, order, appeal, or Writ Petition pertaining solely to the Fee Award or the plan for allocation of the Settlement Fund will not in any way delay or preclude the Judgment from becoming Final.

1.12.   Judgment or Final Approval Order and Judgment: the Final Judgments and Orders of Dismissal With Prejudice to be entered by the Court, substantially in the form attached hereto as Exhibit A.4.

1.13.   Litigation: Collectively, the putative class actions referenced in the definition of Complaints above.

1.14.   Mediator: Rodney Max of Upchurch Watson White & Max, 125 South Palmetto Avenue, Daytona Beach, Florida 32114.

1.15.   Net Settlement Fund: the Settlement Fund less all Administrative Costs (as defined in section IV.C, below), the Fee Award, and any taxes or tax expenses.

1.16.   Notice: the Legal Notice of Proposed Class Action Settlement substantially in the form attached hereto as Exhibit A.2 ("Publication Notice") and the Notice of Pendency of Class Action and Proposed Settlement substantially in the form attached hereto as Exhibit A.3 ("Longform Notice"), to be distributed in accordance with the terms of section IV.A, below, for the purpose of notifying the Class Members of the pendency of the Litigation, the material terms of the proposed Settlement, and Class Members' options with respect thereto.

1.17.   Parties: the parties to the Litigation, *i.e.*, the Representative Plaintiffs and the Defendants (as distinct from Settling Parties, defined below).

1.18.   <u>Person</u>: an individual, corporation, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, or any other business or legal entity, and such individual's or entity's spouse, heirs, predecessors, successors, representatives, and assignees.

1.19.   <u>Preliminary Approval Date</u>: the date entered by the Court on a Preliminary Approval and Notice Order.

1.20.   <u>Preliminary Approval and Notice Order</u>: a Court order, substantially in the form attached hereto as Exhibit A.1, providing for, among other things, preliminary approval of the Settlement and dissemination of the Notice to the Class in each of the matters in which preliminary approval is sought for the Settlement Agreement.

1.21.   <u>Protected Persons</u>: Defendants and the Undertaking Parties, and each of their respective past and present officers, directors, employees, insurers, agents, representatives, investors, customers, partners, joint-venturers, parents, subsidiaries (defined as any entity in which a Defendant or Undertaking Party owns or controls, directly or indirectly, at least 50% of the voting securities or the right to elect a majority of the members of the board of directors, or by contract or otherwise controls such entity, or has the right to direct the management of such entity), affiliates, attorneys, successors and assigns; as well as all Persons that used, deployed or caused the deployment of, in online interactions with Class Members, Clearspring's Launchpad and/or Add This products; and all Persons in connection with whom defendants Quantcast, Clearspring, or an Undertaking Party deposited a Cookie or an LSO on a computer or device owned, controlled, or used by a Class Member.

1.22.   <u>Released Claims</u>: Any and all claims for payment, non-economic or injunctive relief of any kind or nature and any and all liabilities, demands, obligations, losses, actions, causes of action, damages, costs, expenses, attorneys' fees and any and all other claims of any nature whatsoever, based on any of the laws, regulations, statutes or rules cited, evidenced or referenced by such allegations and statements, or any other claims, including but not limited to: all claims, including unknown claims, as set forth in Section 5.3 below, arising from or relating

Settlement Agreement                                    4

to (i) any of the allegations, facts or statements set out in, or to any claim that was or could have been brought in any of the Complaints; (ii) Defendants', the Undertaking Parties' and their subsidiaries' and affiliates' use of LSOs; alleged depositing of Cookies or LSOs on the computers of persons who accessed one or more of Defendants', the Undertaking Parties' or their subsidiaries' or affiliates' websites or other online content (in the case of the Undertaking Parties, their subsidiaries and affiliates, whether such Cookies or LSOs were deposited by or through an Undertaking Party, a subsidiary or affiliate thereof, Quantcast, Clearspring or any other Person); the regeneration or redeposit of Cookies after a user deleted those Cookies; or the alleged obtaining or provision of information from or about a user contrary to either the user's consent or intent; and (iii) claims that Defendants, the Undertaking Parties or their subsidiaries or affiliates allegedly tracked users, shared their information or displayed advertising to them without sufficient notice. Without limiting the foregoing, for avoidance of doubt, the definition of Released Claims is intended to provide any Protected Person that is an Undertaking Party or a subsidiary or affiliate thereof with a full release from all claims Class Counsel presently is pursuing involving LSOs and similar technologies in other cases, specifically: *Davis v. VideoEgg, Inc.*, No. CV 10 7112 (C.D. Cal.); *La Court v. Specific Media, Inc.*, No. 10-CV-1256 JVS (C.D. Cal.); *Aughenbaugh v. Ringleader Digital, Inc.*, No. 10-CV-1407-CJC-RNB (C.D. Cal.); and *Hillman v. Ringleader Digital, Inc.*, No. 10-CV-8315 (S.D.N.Y.); and such other similar case(s) as to which the Parties may agree in writing from time to time prior to the date approved by the Court for persons to object to or exclude themselves from the Settlement, which agreement shall not be unreasonably withheld by any Party and which writing(s) shall be deemed as amending and incorporated into this section 1.22. Notwithstanding the foregoing, excluded from Released Claims are all claims related to the use or deployment of non-Quantcast and non-Clearspring LSOs by any Person other than the Defendants or the Undertaking Parties.

    1.23.  <u>Representative Plaintiffs:</u> The Representative Plaintiffs are, subject to Court approval: Jennifer Aguirre; A.A., a minor, by and through her parent Guardian Ad Litem, Jose Aguirre; Alan Bonebrake; Alejandro Godoy; Byron Griffith; J.H., a minor, by and through his

parent, Guardian Ad Litem, Jeff Hall; R.H., a minor by and through her parent Guardian Ad Litem, Jeff Hall; Mary Huebner; Erica Intzekostas; Jose Marquez; Kira Miles; Toni Miles; Terrie J. Moore; Austin Muhs; David Rona; Brittany Sanchez; Edward Valdez; Gerardo Valdez ; Kayla Valdez, and Brian White; as well as any others appointed by the Court in the Preliminary Approval and Notice Order to serve as Representative Plaintiffs.

1.24.   <u>Settlement</u>: the terms of settlement set forth in this Settlement Agreement.

1.25.   <u>Settlement Fund</u>: the total sum of two million four hundred thousand dollars ($2,400,000), which shall be paid in accordance with this Settlement Agreement.

1.26.   <u>Settling Parties</u>: Defendants, the Representative Plaintiffs, the Undertaking Parties and all Class Members.

1.27.   <u>Undertaking Parties</u>: Defendants Demand Media, Inc.; Hulu, LLC; JibJab Media, Inc.; NBC Universal, Inc.; and Scribd, Inc.; News Corporation, an affiliate and the ultimate parent of Defendants Fox Entertainment Group, Inc. and MySpace, Inc.; Viacom Inc., of which Defendant MTV Networks is a division of a subsidiary, Viacom International Inc.; and The Walt Disney Company, of which Defendants American Broadcasting Companies, Inc., ESPN, Inc., Soapnet, LLC and Walt Disney Internet Group are subsidiaries, and Warner Music Inc., of which Warner Brothers Records Inc. is an affiliate.

1.28.   The plural of any term defined herein includes the singular, and vice versa.

## II.   <u>INTRODUCTION</u>

### A.   <u>Background of the Settlement</u>

2.1.   On July 23, 2010 and July 30, 2010, the *Valdez, et al. v. Quantcast Corporation, et al.* and *Aguirre v. Quantcast Corporation, et al.* Complaints were filed against Quantcast (and other defendants). Collectively, these Complaints alleged violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. 1030; (ii) the Electronic Communications Privacy Act, 18 U.S.C. § 2510; (iii) the Video Privacy Protection Act, 18 U.S.C. § 2710; (iv) California's Computer Crime Law, Penal Code § 502; (v) California's Invasion of Privacy Act, California Penal Code § 630;

Settlement Agreement                           6

(vi) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (vii) the California Consumer Legal Remedies Act; (viii) Unjust Enrichment; and (ix) California Uniform Trade Secrets Act, California Civil Code § 3426. On September 21, 2010, the *Valdez, et al. v. Quantcast Corporation, et al.* and *Aguirre v. Quantcast Corporation, et al.* actions were consolidated by order of the court in the Central District of California as *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW-JCG. The Complaint in *Godoy v. Quantcast Corporation*, filed October 13, 2010, was determined by the Court to be related to the foregoing matters.

2.2.     The Complaints in *White, et al. v. Clearspring Technologies, Inc., et al.*, *Intzekostas v. Fox Entertainment Group, Inc., et al.*, and *Rona v. Clearspring Technologies, Inc.* were filed respectively on August 10, 2010, September 10, 2010, and October 18, 2010, alleging claims against Clearspring (and other defendants). Collectively these Complaints alleged violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. § 1030; (ii) California's Computer Crime Law, Penal Code § 502; (iii) California's Invasion of Privacy Act, California Penal Code § 630; (iv) the California Consumer Legal Remedies Act, California Civil Code § 1750; (v) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (vi) Trespass to Personal Property/Chattels; (vii) Unjust Enrichment; and (viii) the Electronic Communications Privacy Act, 18 U.S.C. § 2510. On October 13, 2010, the *White, et al. v. Clearspring Technologies, Inc., et al.* and *Intzekostas v. Fox Entertainment Group, Inc., et al.* actions were consolidated by order of the court in the Central District of California as *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW-JCG.

2.3.     The Court has found that all of the matters referred to in sections 2.1 and 2.2, above, are related actions.

2.4.     Commencing in October 2010, the Parties conducted a series of settlement negotiations including, among other things, an in-person mediation conducted by the Mediator on October 19, 2010, during which the Parties each represent that they have candidly aired the strengths and weaknesses in their respective litigation positions.

2.5.    At the October 19, 2010 mediation, the Parties tentatively reached an agreement in principle for the resolution of all claims alleged against Defendants in the Litigation, subject to additional negotiations and the Parties' thereafter reaching agreement on final settlement documentation, including this Settlement Agreement.

### B.    Defendants' and Undertaking Parties' Denial of Wrongdoing and Liability

2.6.    Defendants and the Undertaking Parties deny any and all wrongdoing whatsoever. Nothing in this Settlement Agreement shall be construed, interpreted, or deemed to be evidence of or an admission, presumption, or concession on the part of any Defendant or Undertaking Party of any fault, liability, or wrongdoing as to any facts or claims asserted in the Litigation (or any infirmity in the defenses that Defendants have asserted or could assert in the Litigation) or in any other actions or proceedings. Nothing in this Settlement Agreement may be invoked, offered, adduced, or received in evidence or otherwise used against any Defendant or Undertaking Party in the Litigation or in any other action or proceeding, whether civil, criminal, or administrative.

### C.    The Settlement Is Fair, Adequate, and Reasonable

2.7.    Class Counsel have conducted extensive research and investigation relating to the claims and the underlying events and transactions alleged in the Complaint during the prosecution of the Litigation which have included: (a) interviews of the Representative Plaintiffs and analysis of their computers to assess the potential claims of each individual; (b) the review of public statements, including consumer-facing statements on Defendants' websites, press releases attributed to Defendants, and articles about Defendants; (c) analysis of Defendants' interactions with web browsers; and (d) research of the applicable law with respect to the claims asserted in the Complaint and arguments asserted by Defendants. Although Class Counsel believe the claims asserted against Defendants in the Litigation have substantial merit, Class Counsel recognize and acknowledge that continued prosecution of the Litigation through trial and possible appeal would be protracted and expensive.

2.8.    Class Counsel have also taken into account the uncertain outcome and the risk of any litigation, especially in complex actions such as the Litigation, as well as the difficulties and delays inherent in such litigation. Class Counsel are mindful of the inherent problems of proof and possible defenses to the claims asserted in the Litigation against Defendants.

2.9.    As noted, Class Counsel have conducted extensive discussions and arm's-length negotiations with Defense Counsel including with the assistance of the Mediator, with respect to a resolution of the claims in the Litigation against Defendants and with the goal of achieving the best relief possible consistent with the interests of the Class and the strengths and weaknesses of the claims and defenses asserted in the Litigation.

2.10.   Based on evaluation of all of these factors, Class Counsel have concluded in light of the applicable law that the terms of the Settlement are fair, adequate, and reasonable, and that it is desirable and in the best interests of the Representative Plaintiffs and all Class Members that the Litigation be fully and finally settled as against Defendants and the Undertaking Parties on the terms set forth in this Settlement Agreement.

**NOW THEREFORE,** in consideration of the promises and mutual covenants set forth herein, it is hereby STIPULATED AND AGREED, by and among the Parties to this Settlement Agreement, through their respective attorneys, subject to approval of the Court pursuant to Rule 23 of the Federal Rules of Civil Procedure and satisfaction of all the terms and conditions set forth herein, that the Litigation and all Released Claims shall be compromised, settled, released, and dismissed with prejudice, upon and subject to the following terms.

### III.    CLASS CERTIFICATION

3.1     The Parties stipulate to the certification of the Class, for settlement purposes only, pursuant to Rules 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure.

3.2     The class certification contemplated by this Settlement Agreement is for purposes of settlement only, and nothing in this Settlement Agreement shall constitute, in this or in any other action or proceeding, an admission by any Defendant or Undertaking Party or a finding or

evidence that any claims that either were brought or could have been brought in the Litigation are appropriate for class treatment or that any requirement for class certification is or could otherwise be satisfied. By entering into this Settlement Agreement, Defendants and the Undertaking Parties in no way waive their right to challenge or contest the continued maintenance of the Litigation or any other lawsuit or class action and to oppose certification of any class or otherwise oppose the claims of the class for litigation purposes. Nor may the fact that a Defendant or Undertaking Party entered into this Settlement Agreement be offered, received, or construed as an admission, finding, or evidence, for any purpose, including the appropriateness of class certification, except for purposes of enforcing this Settlement Agreement.

## IV.   SETTLEMENT CONSIDERATION

### A.   Dissemination of the Notice

In accordance with the dates set forth in the Preliminary Approval and Notice Order:

4.1.    During the Notice period, Defendants shall cause the Court-approved summary form of Publication Notice substantially in the form attached hereto as Exhibit A.2 and Longform Notice substantially in the form attached hereto as Exhibit A.3, and believed by the Parties to be the best practicable notice, and which shall be national in scope, to be published in accordance with a plan to be agreed to among the parties and submitted to the Court in conjunction with the filing of this Settlement Agreement with the Court. The cost of publication of the Publication Notice and Longform Notice shall constitute an Administrative Cost and be paid from the Settlement Fund. For both the *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW and *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW consolidated actions, all notices disseminated under this Settlement Agreement shall be consolidated for all purposes, including administration and dissemination. Notices to Class Members will include Clearspring's representation that cookies deposited by Clearspring during the Class Period can be identified by an origin domain of "clearspring.com"; LSOs deposited by

Clearspring during the Class Period can be identified by an origin domain of "clearspring.com" and a filename of "clearspring.sol." Notices to Class Members will include Quantcast's representation that cookies and LSOs deposited by Quantcast during the Class Period can be identified either by a filename including the string "__qca" or the string "Quantserve." Notices to Class Members will include Quantcast and Clearspring's representation that, because tens of millions of web pages used Clearspring or Quantcast technology, the Class, accordingly, is comprised of substantially all internet users in the United States.

4.2.    To the extent that additional notices to the Class are ordered by the Court or become necessary for the Court's approval of the Settlement Agreement, such additional notices may be made in the same manner as the original Notice, and the out-of-pocket costs, if any, of any additional notices, will constitute Administrative Costs and will be reimbursed to Defendants from the Settlement Fund.

4.3.    Within ten (10) days of the filing of the Settlement Agreement with the Court, Defendants shall properly notify the appropriate state and federal officials of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715.

**B.    Settlement Fund**

4.4.    The Settlement Fund shall consist of a total of two million four hundred thousand dollars ($2,400,000.00), to be paid by or at the direction of defendants Quantcast and Clearspring. The Settlement Fund shall be kept under the control and possession of those Defendants until a date no later than twenty (20) days after Preliminary Approval, at which time the Settlement Fund shall be deposited by or at the direction of those Defendants into a separate bank account specifically established by those Defendants for purpose of effecting this Settlement.

4.5.    Not later than thirty (30) days prior to the deadline set by the Court for Class Members to opt out of the Settlement Class or object to the Settlement Agreement, Plaintiffs shall submit for the Court's approval the plan for allocating and distributing such funds in the

Net Settlement Fund for which allocation and distribution are not otherwise set forth herein (the "Allocation and Distribution Plan"). The Allocation and Distribution Plan shall detail Plaintiff's proposal for allocating and distributing funds in the form of *cy pres* relief to one or more non-profit organizations to fund research and education projects and activities to promote consumer awareness and choice regarding the privacy, safety, and security of electronic information from and about consumers. The Allocation and Distribution Plan shall specify that such projects and activities shall exclude the sponsorship or funding of litigation or lobbying efforts regarding specific legislation.

### C.   <u>Administrative Costs</u>

4.6.    Subject to the Court's approval of a submission made by Plaintiffs, the Settlement Fund will be applied to payment of the reasonable costs incurred administering the Settlement, including but not limited to the out-of-pocket costs of dissemination of the Notice pursuant to section IV.A and retaining a settlement administrator ("Administrative Costs"); provided, and notwithstanding any other provision of this section IV.C, in no event shall Administrative Costs include Defendants' and/or Undertaking Parties' internal administrative costs.

4.7.    All Administrative Costs that are reasonably and necessarily incurred prior to the Effective Date shall be advanced from the Settlement Fund, subject to prior approval by Class Counsel and Defense Counsel.

4.8.    Under no circumstances will the Representative Plaintiffs, Class Counsel, or any Class Member have any liability for Administrative Costs under the Settlement. If the Settlement is terminated or fails to become Final for any reason, defendants Quantcast and Clearspring will absorb such costs in their entirety.

4.9.    Within twenty (20) days of the Court's issuance of the Preliminary Approval and Notice Order, defendants Quantcast and Clearspring shall transfer to a third-party class action administrator to be designated by Class Counsel the sum of seven hundred fifty thousand dollars ($750,000.00) to be used to cover the anticipated Administrative Costs. Such amount shall be

deducted from the Settlement Payment as a credit therefrom. In the event that the Court refuses to approve the settlement for any reason, then the class action administrator shall promptly account to Defendants' counsel for the amount of actual expenses incurred in connection with the administration of this settlement and return to Defendants the unused balance.

4.10.   Any disputes over the propriety of any Administrative Costs or the reimbursement thereof from the Settlement Fund shall be resolved by the Mediator in the manner directed by the Mediator.

### D.   Attorneys' Fees, Expenses, and Incentive Awards

4.11.   Class Counsel have not received any payment for prosecuting this case on behalf of Representative Plaintiffs and Members of the Class, nor have they been reimbursed for their out-of-pocket expenses. On or before the date specified in the Preliminary Approval and Notice Orders, Class Counsel will submit their Fee Application requesting approval of a Fee Award consisting of an award of attorneys' fees in an amount of up to one-quarter (25 percent) of the Settlement Fund as defined in Section 1.25. Defendants agree that a request by Class Counsel for a Fee Award of that or any lesser amount is fair and reasonable and they will not object to or otherwise challenge Class Counsels' Fee Application from the Settlement Fund. Class Counsel have, in turn, agreed not to seek more than said amount from the Court.

4.12.   The amount of any Fee Award, costs and expenses shall be paid from the Settlement Fund. In the event the Settlement is not finally approved, Defendants are under no obligation to pay, directly, indirectly or out of the Settlement Fund, Class Counsel's fees, costs or expenses.

4.13.   Defendants Quantcast and Clearspring will pay the Fee Award from the Settlement Fund within ten (10) business days after the Settlement becomes Final.

4.14.   The Fee Application and the Court's decision to grant or deny it, in whole or in part, are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness, and adequacy of the Settlement. Any order or proceedings relating to the Fee

Application or Fee Award, or any appeal from any order relating thereto or reversal or modification thereof, will not operate to terminate or cancel this Settlement Agreement, or affect or delay the finality of the Judgment approving the Settlement and this Settlement Agreement. No order of the Court or modification or reversal on appeal of any order of the Court reducing any Fee Award shall constitute grounds for cancellation or termination of this Agreement.

4.15.   In addition to any benefits afforded under the Settlement, and in recognition of their efforts on behalf of the Class, each Representative Plaintiff shall, subject to Court approval, receive $1,500 as appropriate compensation for time and effort serving as a Representative Plaintiff in the Litigation. Defendants Quantcast and Clearspring shall pay such amount from the Settlement Fund to the Representative Plaintiffs, in care of Class Counsel, within ten (10) business days after the Settlement becomes Final.

4.16.   Except as otherwise provided in this section, or as governed by pre-existing agreements among Defendants, each Party will bear his/her/its own costs of suit, including attorneys' fees, incurred in bringing or defending against the Litigation.

### E.   Tax Liability For Settlement Fund

4.17.   Under no circumstances will the Defendants or Defense Counsel have any liability for taxes or tax expenses under the Settlement.

### G.   Non-Monetary Relief

4.18.   Nothing in this document shall be construed to relieve any Defendant or Undertaking Party from any law, regulation, or contractual obligation that may impose different or more stringent requirements than those set forth in this document. Should a Defendant or Undertaking Party be subject to a law or regulation imposing obligations inconsistent with the requirements of this document, such law or regulation shall control.

4.19.   In connection with this Settlement, Quantcast and Clearspring represent that they do not presently, and will not in the future, employ LSOs to: (i) "respawn" HTTP cookies; and/or (ii) serve as an alternative method to HTTP cookies for storing information about a user's web

browsing history, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content, without adequate disclosure; and/or (iii) otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies.

4.20.   Reference is made to (i) the 2008 Network Advertising Initiative Principles (the "NAI Principles"); and (ii) the "Self Regulatory Principles for Online Behavioral Advertising" available at http://www.iab.net/media/file/ven-principles-07-01-09.pdf (the "Self-Regulatory Principles").

4.20.1.   Within thirty (30) days of entry of the Preliminary Approval and Notice Orders in each matter in which Preliminary Approval of this Settlement Agreement is sought, the Undertaking Parties shall send a request to at least one of the industry groups charged with receiving comments to the Self-Regulatory Principles that those Self-Regulatory Principles should be amended to include express prohibitions on the use of LSOs or any similar technology to regenerate, without disclosure, HTTP cookies that a user affirmatively deleted. Additionally, the Undertaking Parties shall request that the Self-Regulatory Principles be amended to include guidance to member firms that LSOs should not be used without disclosure as an alternative method to HTTP cookies for storing information about a user's web browsing history across unaffiliated domains, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content. If an Undertaking Party is a member of the Network Advertising Initiative, the Undertaking Party also shall inform the Network Advertising Initiative of its preference that the NAI Principles be similarly amended.

4.20.2.   No Undertaking Party shall, in an official capacity in any public or industry forum, take a position contrary to those stated in Paragraph 4.20.1. To the extent an Undertaking Party has decision-making authority in any of the above-mentioned bodies, that Undertaking Party shall use its decision-making authority to attempt to effect such preferences.

4.20.3.   Each Undertaking Party shall, (i) in its online Privacy Policy or an opt-out page clearly linked thereto: maintain a link to the Network Advertising Initiative "Opt Out of

Behavioral Advertising" tool, presently located at http://www.networkadvertising.org/managing/opt_out.asp or, once it is fully implemented for consumers, to the industry-developed website page currently represented by http://www.aboutads.info/consumers/; or, on the Undertaking Party's own internet home page, maintain a link to a page with substantially the same information and consumer options; or (ii) once it is fully implemented for consumers, display the "Advertising Option Icon" discussed in the Self-Regulatory Principles, which links to an OBA disclosure statement and opt-out mechanism. A link to the Undertaking Party's online Privacy Policy or the Advertising Option Icon shall be displayed on the home page of each Undertaking Party's U.S. consumer-oriented website(s) and on at least a significant number of those consumer-oriented web pages of the Undertaking Party's U.S. consumer-oriented website(s) on which consumer data is collected or used for advertising.

4.20.4.    If, after the Settlement becomes Final, an Undertaking Party or its agents deposit LSOs on the computers of users who visit one or more of its U.S. consumer-oriented websites or interact with its widgets or other applications on such websites, the Undertaking Party shall include, in its online Privacy Policy, a disclosure of its use of LSOs and a link to at least one website or utility offering users the ability to manage LSOs, if such website or utility is available. By linking to such a third-party website or utility in order to comply with this Agreement, the Undertaking Party will not assume responsibility for the functionality or any other aspect of such website or utility. If one or more of the Undertaking Party's websites, widgets, or application components may not maintain its or their full user functionality unless the user's settings permit full acceptance of LSOs, the Undertaking Party shall so disclose in its Privacy Policy.

4.20.5.    An Undertaking Party's Privacy Policy, links to which shall appear as specified above in Paragraph 4.20.3, shall include an email address or other online reporting mechanism to which members of the public can send any privacy-related concerns respecting the operation of the Undertaking Party's websites. The Undertaking Party will regularly review

messages sent to this address or mechanism, but need not individually review duplicative or cumulative messages appearing to have emanated from or at the behest of the same source.

4.20.6.   These provisions shall remain in effect until June 30, 2013. Except in the event of willful noncompliance, should an Undertaking Party discover or be informed as set forth in Section 4.20.5 of any instance of non-compliance with the above provisions, that Undertaking Party shall have thirty (30) calendar days after such discovery or information to cure such breach before being considered in breach of this Settlement Agreement.

## V.   **RELEASES**

5.1.   Upon the Effective Date, each of the Representative Plaintiffs and each of the Class Members will be deemed to have, and by operation of the Judgment will have, fully, finally, and forever released, relinquished, and discharged the Protected Persons from all Released Claims.

5.2.   The Representative Plaintiffs, on behalf of all Class Members, acknowledge and agree that they have read and understand the contents of Section 1542 of the Civil Code of the State of California, and, to the fullest extent permitted by law, the Representative Plaintiffs and all Class Members expressly, knowingly, intentionally, and irrevocably waive any and all rights and benefits that they may have under Section 1542 or any other similar state or federal statute, or common law or other legal principle. Section 1542 reads as follows:

> **Section 1542. (General Release - Claims Extinguished) A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.**

5.3.   The Representative Plaintiffs and one or more Class Members may hereafter discover facts different from or in addition to those that they now know or believe to be true with respect to the releases provided for in this section V. Nevertheless, the Representative Plaintiffs

and all Class Members hereby expressly waive and release upon the Effective Date any and all Released Claims, whether known or unknown, suspected or unsuspected, foreseen or unforeseen, contingent or non-contingent, without regard to the subsequent discovery or existence of such different or additional facts.

5.4.    Notwithstanding anything to the contrary in this Settlement Agreement, the releases contained in Section V herein do not extend to any action or proceeding to enforce or defend any rights or obligations arising after the Effective Date under this Agreement.

## VI.    <u>PRELIMINARY APPROVAL AND NOTICE ORDERS; FINAL FAIRNESS HEARING</u>

6.1.    Promptly after execution of this Settlement Agreement, Class Counsel will move the Court for entry of Preliminary Approval and Notice Orders in each matter to which the Settlement Agreement's application is contemplated, requesting, *inter alia*, preliminary approval of the Settlement and for a stay of all proceedings in the Litigation against the Protected Persons until the Court renders a final decision on approval of the Settlement. The motions shall include (a) the proposed Preliminary Approval Orders in the form attached as Exhibit A.1 hereto; (b) the proposed forms of Notice of the Settlement to Class Members substantially in the form of Exhibits A.2 and A.3 hereto; and (c) proposed Final Approval Orders and Judgments finally approving the Settlement in the form attached as Exhibit A.4 hereto.

6.2.    After dissemination of the Notice in accordance with the Preliminary Approval and Notice Orders, Class Counsel will move the Court for Final Approval Orders and entry of the Judgments,

(a)    certifying the settlement Classes, and, fully and finally approving the Settlement contemplated by this Agreement and its terms as being fair, reasonable and adequate within the meaning of Rule 23 of the Federal Rules of Civil Procedure and directing its consummation pursuant to its terms and conditions;

(b)    finding that the notice given to Class Members as contemplated in section IV.A, above, constitutes the best notice practicable

under the circumstances and complies in all respects with the requirements of Rule 23 of the Federal Rules of Civil Procedure and due process;

        (c)     directing that the Litigation be dismissed with prejudice as to Protected Persons and, except as provided for herein, without costs;

        (d)     discharging and releasing the Protected Persons from all Released Claims;

        (e)     permanently barring and enjoining the institution and prosecution, by Plaintiffs and the Class Members, of any other action against the Protected Persons, in any court, asserting any Released Claims;

        (f)     reserving continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation and enforcement of this Agreement;

        (g)     determining pursuant to Fed. R. Civ. P. 54(b) that there is no just reason for delay and directing entry of a final judgment as to defendants in the Litigation; and

        (h)     containing such other and further provisions consistent with the terms of this Agreement to which the parties expressly consent in writing.

6.3.     The Parties will request that the Court hold a hearing, at least ninety (90) days after Defendants serve the appropriate state and federal officials with proper notice of this Settlement Agreement pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1715, on whether the Settlement should be granted final approval and whether Class Counsels' Fee Application should be granted.

6.4.     Following dissemination of the Notice as provided in the Preliminary Approval and Notice Orders, Class Members will have the right to opt out of the Settlement in accordance with the procedures set forth in the Notice. Any right to opt out shall be personal to the Class Member and shall not be assignable.

6.5.     In the event that 3,000 or more Class Members opt out of the Settlement, Defendants and the Undertaking Parties will be entitled at their sole option to void, nullify, terminate, and/or rescind the Settlement Agreement. Such option must be exercised collectively

by all Defendants and Undertaking Parties at least fourteen (14) calendar days before the final fairness hearing on the approval of the Settlement.

## VII.   OPT-OUT AND OBJECTIONS

7.1      Any Person may opt out of the Class at any time during the period of time approved by the Court and as will be outlined in the Court-approved Notice. Opt-outs must be post-marked by a date approved by the Court and specified in the Notice. In order to exercise the right to opt out, the Person seeking to opt-out must complete and return a request for exclusion to the claims administrator during the opt-out period. Except for those Persons who have properly opted out, all Class Members will be bound by this Settlement and the Judgment to be entered following final approval of this Settlement Agreement. Any Person who elects to opt out of the Settlement Class shall not (i) be bound by any orders or Judgment entered in this Litigation; (ii) be entitled to relief under this Settlement; (iii) gain any rights by virtue of this Settlement; or (iv) be entitled to object to any aspect of this Settlement. Any request for exclusion must be personally signed by the Person requesting exclusion. So-called "mass" or "class" opt-outs shall not be allowed.

7.2      Any Class Member who intends to object to this Settlement must include his/her name and address, include all arguments, citations, and evidence supporting the objection and that they are a member of the Class, and provide a statement whether the objector intends to appear at the final fairness hearing, either with or without counsel. An objection will be considered submitted if mailed to the Court, to Class Counsel and/or to any Defendant's Counsel. Should an objection be mailed to Class Counsel or a Defendant's Counsel, such counsel shall send copies to other counsel and to the Court. It shall be the objector's responsibility to ensure receipt of any objection by the Court, Class Counsel or Defendants' Counsel. Objections must be post-marked by a date approved by the Court and specified in the Notice. Any Class Member who fails to timely file a written objection and notice of his or her intent to appear at the fairness hearing pursuant to this paragraph or as detailed in the Notice, shall not be permitted to

object to this Settlement at the fairness hearing, and shall be foreclosed from seeking any review of this Settlement by appeal or other means.

## VIII.   **CONDITIONS**

8.1.    The Effective Date of this Settlement Agreement is conditioned upon the occurrence of all of the following events:

(a)    The Court enters the Preliminary Approval and Notice Orders in each of the respective matters to which this Settlement Agreement applies;

(b)    Defendants and the Undertaking Parties do not exercise their option under subsection 6.5 herein to void, nullify, terminate, and/or rescind the Settlement Agreement;

(c)    The Court enters the Judgment, providing, among other things, that the Class is certified for settlement purposes, that there has been adequate and sufficient notice of the Settlement to the Class, and that the terms and conditions of the Settlement are fair, reasonable, and adequate as a settlement of the claims of the Class in the Litigation;

(d)    The Judgment becomes Final;

(e)    The Litigation is dismissed with prejudice as to Defendants and the Protected Persons; and

(f)    The Representative Plaintiffs and all Class Members release Defendants and all Protected Persons from the Released Claims.

8.2.    In the event that any one or more of these conditions is not met, this Settlement Agreement will be of no force or effect, and the Parties will be deemed to be in the same position as they occupied prior to entering into this Settlement Agreement, without waiver of any rights, claims or defenses, unless the Parties mutually agree in writing to proceed with this Agreement.

8.3.    If the Court does not enter the Preliminary Approval and Notice Orders, substantially in the form of Exhibit A.1 hereto, the Final Approval Orders and Judgments, substantially in the form of Exhibit A.4 hereto, or if the Court enters Final Approval Orders and Judgments and appellate review is sought in a matter and, on such review, the Final Approval

Order and Judgment is finally vacated, modified, or reversed, then this Agreement and the Settlement incorporated therein shall be cancelled and terminated as to such matter, unless all parties who are adversely affected thereby, in their sole discretion within thirty (30) days from the date of receipt of such ruling to such parties, provide written notice to all other parties hereto of their intent to proceed with the Settlement under the terms of the Preliminary Approval Order or the Final Approval Order and Judgment as modified by the Court or on appeal. Such notice may be provided on behalf of Plaintiffs and the Class Members by Class Plaintiffs' Counsel. No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Agreement by any Settling Party. Without limiting the foregoing, any Defendant shall have, in its sole and absolute discretion, the option to withdraw from the Settlement in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of all Released Claims against it and/or any Undertaking Party with which it is affiliated.

8.4.    If this Settlement Agreement is not finally approved for any reason or fails to become effective or Final in accordance with its terms, the Settlement Fund, less any outstanding Administrative Costs incurred or due and owing, and any amounts incurred or due and owing in connection with taxes or tax expenses provided for herein, will revert entirely to defendants Quantcast and Clearspring.

8.5.    If a case is commenced with respect to any Defendant under Title 11 of the United States Code (Bankruptcy) or a trustee, receiver, or conservator is appointed under any similar laws, and if a final order of a court of competent jurisdiction is entered determining that payments by that Defendant pursuant to the Settlement are a preference, voidable or fraudulent transfer, or similar transaction, then the releases given and Judgment entered in favor of that Defendant pursuant to this Settlement Agreement will be null and void, but all other releases,

including releases in favor of Protected Persons who contracted with the Defendant in bankruptcy, will retain their full force and effect.

## IX.   **MISCELLANEOUS PROVISIONS**

9.1.    The Parties acknowledge that it is their intent to consummate this Settlement Agreement, and agree to cooperate to the extent reasonably necessary to effectuate and implement all terms and conditions of this Settlement Agreement and to exercise their best efforts to accomplish such terms and conditions.

9.2.    The Parties intend the Settlement to be a final and complete resolution of all disputes between them with respect to the Litigation and the Released Claims. The Settlement compromises claims that are contested and will not be deemed an admission by any Settling Party as to the merits of any claim or defense.

9.3.    The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether an application for attorneys' fees and expenses has been submitted to the Court or resolved.

9.4.    Neither this Settlement Agreement, the Settlement, nor any act performed or document executed pursuant to or in furtherance of the Settlement is or may be deemed to be an admission of, or evidence of: (i) the validity of any Released Claims; (ii) any wrongdoing or liability of any Defendant or Undertaking Party; or (iii) any fault or omission of any Defendant or Undertaking Party in any civil, criminal, or other proceeding in any court, administrative agency, or other tribunal. Neither this Settlement Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement, shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that any of the Protected Persons may file this Settlement Agreement or the Judgment, in any action that may be brought against them, in order to support any defense or counterclaim, including without limitation those based on principles of *res*

*judicata*, collateral estoppel, release, good faith settlement, judgment bar or reduction, or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim.

9.5.     All of the Exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by this reference. Any inconsistency between this Settlement Agreement and the Exhibits attached hereto shall be resolved in favor of this Settlement Agreement.

9.6.     The Parties acknowledge and agree that this Settlement Agreement and the Exhibits attached hereto constitute the entire agreement among the Parties, that they have not executed this Settlement Agreement in reliance on any promise, representation, inducement, covenant, or warranty except as expressly set forth herein, and that this Settlement Agreement supersedes all other prior statements or agreements, whether oral or written, to the extent any provision hereof is inconsistent with any such prior oral or written statements or agreements.

9.7.     This Settlement Agreement may not be amended except by a writing executed by all Parties hereto or their respective successors-in-interest.

9.8.     The Court will retain jurisdiction with respect to implementation and enforcement of the terms of this Settlement Agreement and over any disputes arising under this Settlement Agreement, and all Parties hereby submit to the jurisdiction of the Court for such purposes.

9.9.     Each Party represents and warrants to all other Parties that such Party: (a) was represented by attorneys of the Party's choosing in connection with the execution of this Settlement Agreement; (b) has read and understood all aspects of this Settlement Agreement and all of its effects; and (c) has executed this Settlement Agreement as a voluntary act of the Party's own free will and without any threat, force, fraud, duress, or coercion of any kind.

9.10.   Class Counsel and Representative Plaintiffs represent and warrant that Class Counsel is expressly authorized by the Representative Plaintiffs to take all appropriate action required or permitted to be taken by the Class pursuant to this Settlement Agreement to effectuate its terms, and is expressly authorized to enter into any modifications or amendments to this Settlement Agreement on behalf of the Class.

9.11.   If any provision of this Settlement Agreement is declared by the Court to be invalid, void, or unenforceable, the remaining provisions of this Settlement Agreement will continue in full force and effect, unless the provision declared to be invalid, void, or unenforceable is material, at which point the Parties shall attempt to renegotiate the Settlement Agreement or, if that proves unavailing, either Party can terminate the Settlement Agreement without prejudice to any Party.

9.12.   This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Plaintiffs and Class Counsel shall be binding upon all Class Members.

9.13.   This Settlement Agreement will be construed as if the Parties jointly prepared it, and any uncertainty or ambiguity will not be interpreted against any one Party because of the manner in which this Settlement Agreement was drafted or prepared.

9.14.   The headings used in this Settlement Agreement are for convenience only and will not be used to construe its provisions.

9.15.   This Settlement Agreement may be executed by facsimile and in any number of counterparts, all of which will be construed together and will constitute one document.

9.16.   This Settlement Agreement shall not be modified in any respect except by a writing executed by the Parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

9.17.   To the extent necessary, the Parties agree to submit any disputes relating to the substance or wording of this Settlement Agreement or the terms or content of the Settlement Agreement to the Mediator. If the Mediator is unable to resolve the dispute, then the dispute will be submitted to the Court. The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Settlement Agreement.

Settlement Agreement                          25

9.18.   This Settlement Agreement will be governed by, and construed in accordance with, the laws of the State of California.

9.19.   Each Person executing this Settlement Agreement as Class Counsel or Defense Counsel hereby warrants that such Person has the full authority to make any and all representations or warranties made in this Settlement Agreement, to agree to all terms and conditions of this Settlement Agreement, and to execute this Settlement Agreement.

9.20.   The Parties and their counsel shall keep confidential the terms of this Settlement Agreement until such time as they mutually agree on the content and timing of a joint press release announcing the Settlement and actually issue such release, or until Plaintiffs file a motion for preliminary approval of the Settlement pursuant to subsection 6.1 above, whichever is sooner. Plaintiffs will provide Defendants and the Undertaking Parties with at least one business day's notice of the date on which they intend to file a motion for preliminary approval of the Settlement. The Parties agree that following the joint press release, if issued, no Party will make any statement contrary thereto. Notwithstanding the foregoing, prior to the time that such press release is issued or Plaintiffs file a motion for preliminary approval of the Settlement pursuant to subsection 6.1 above, whichever is sooner, the Parties and their counsel may disclose the fact of such settlement, and Defendants and the Undertaking Parties may disclose the terms of this Settlement Agreement to their accountants, financial, tax and legal advisors, contractual counter-parties or parties with whom they are contemplating contracting, and such other Persons as required to comply with any obligations or requirements that may exist under applicable federal and state tax or securities laws.

**IN WITNESS WHEREOF,** the Parties and the Undertaking Parties have executed and caused this Settlement Agreement to be executed by their duly authorized attorneys, as of the dates set forth below.

Dated: **12 - 3 -** , 2010        COOLEY LLP

                                       Michael G. Rhodes
                                       101 California Street, 5th Floor
                                       San Francisco, CA 94111
                                       Attorneys for Defendant
                                       Clearspring Technologies, Inc.

Dated: _____, 2010        DURIE TANGRI LLP

                                         Michael H. Page
                                       217 Leidesdorff Street
                                       San Francisco, CA 94111
                                       Attorneys for Defendant Quantcast Corp.

Dated: _____, 2010        DEBEVOISE & PLIMPTON LLP

                                         Jeffrey S. Jacobson
                                       919 Third Avenue
                                       New York, NY 10022
                                       Attorneys for Defendants American Broadcasting
                                       Companies, Inc., ESPN, Inc., Fox Entertainment
                                       Group, Inc., MTV Networks, MySpace, Inc., Walt
                                       Disney Internet Group, Soapnet, LLC and
                                       Defendants/Undertaking Parties Hulu, LLC, JibJab
                                       Media, Inc., NBC Universal, Inc. and Scribd, Inc.

**IN WITNESS WHEREOF,** the Parties and the Undertaking Parties have executed and caused this Settlement Agreement to be executed by their duly authorized attorneys, as of the dates set forth below.

Dated: _____, 2010          COOLEY LLP

 

 

_____

Michael G. Rhodes
101 California Street, 5th Floor
San Francisco, CA 94111
Attorneys for Defendant
Clearspring Technologies, Inc.

Dated: _Dec. 3_____, 2010          DURIE TANGRI LLP

 

_____

Michael H. Page
217 Leidesdorff Street
San Francisco, CA 94111
Attorneys for Defendant Quantcast Corp.

Dated: _____, 2010          DEBEVOISE & PLIMPTON LLP

 

 

_____

Jeffrey S. Jacobson
919 Third Avenue
New York, NY 10022
Attorneys for Defendants American Broadcasting
Companies, Inc., ESPN, Inc., Fox Entertainment
Group, Inc., MTV Networks, MySpace, Inc., Walt
Disney Internet Group, Soapnet, LLC and
Defendants/Undertaking Parties Hulu, LLC, JibJab
Media, Inc., NBC Universal, Inc. and Scribd, Inc.

**IN WITNESS WHEREOF,** the Parties and the Undertaking Parties have executed and caused this Settlement Agreement to be executed by their duly authorized attorneys, as of the dates set forth below.

Dated: _____, 2010          COOLEY LLP

 

_____

Michael G. Rhodes
101 California Street, 5th Floor
San Francisco, CA 94111
Attorneys for Defendant
Clearspring Technologies, Inc.

Dated: _____, 2010          DURIE TANGRI LLP

 

_____

Michael H. Page
217 Leidesdorff Street
San Francisco, CA 94111
Attorneys for Defendant Quantcast Corp.

Dated: December 3, 2010          DEBEVOISE & PLIMPTON LLP

_____

Jeffrey S. Jacobson
919 Third Avenue
New York, NY 10022
Attorneys for Defendants American Broadcasting
Companies, Inc., ESPN, Inc., Fox Entertainment
Group, Inc., MTV Networks, MySpace, Inc., Walt
Disney Internet Group, Soapnet, LLC and
Defendants/Undertaking Parties Hulu, LLC, JibJab
Media, Inc., NBC Universal, Inc. and Scribd, Inc.

Dated: _DECEMBER 3,_ 2010

MORRISON & FOERSTER LLP

_[signature]_

Sherman W. Kahn
1290 Avenue of the Americas
New York, NY 10104-0050
Attorneys for Defendant Warner Bros. Records Inc.
and Undertaking Party Warner Music Inc.

Dated: _____, 2010

GREENBERG TRAURIG LLP

_____

Ian C. Ballon
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Attorneys for Defendant Demand Media, Inc.

Dated: _____, 2010

VIACOM INC.

_____

By: Michael Fricklas
Executive Vice President,
General Counsel and Secretary

Dated: _____, 2010

THE WALT DISNEY COMPANY

_____

By: Marsha Reed
Vice President, Governance Admin. &
Assistant Secretary

Dated: _____, 2010

NEWS CORPORATION

_____

By: Ellen Agress
Senior Vice President and Deputy
General Counsel

Settlement Agreement                              28

Dated: _____, 2010          MORRISON & FOERSTER LLP

                                       _____
                                       Sherman W. Kahn
                                       1290 Avenue of the Americas
                                       New York, NY 10104-0050
                                       Attorneys for Defendant Warner Bros. Records Inc.
                                       and Undertaking Party Warner Music Inc.


Dated: 12 / 03 , 2010                  GREENBERG TRAURIG LLP

                                       _____
                                       Ian C. Ballon
                                       2450 Colorado Avenue, Suite 400E
                                       Santa Monica, CA 90404
                                       Attorneys for Defendant Demand Media, Inc.


Dated: _____, 2010          VIACOM INC.

                                       _____
                                       By: Michael Fricklas
                                       Executive Vice President,
                                       General Counsel and Secretary


Dated: _____, 2010          THE WALT DISNEY COMPANY

                                       _____
                                       By: Marsha Reed
                                       Vice President, Governance Admin. &
                                       Assistant Secretary


Dated: _____, 2010          NEWS CORPORATION

                                       _____
                                       By: Ellen Agress
                                       Senior Vice President and Deputy
                                       General Counsel


Settlement Agreement                   28

Dated: _____, 2010          MORRISON & FOERSTER LLP


_____

Sherman W. Kahn
1290 Avenue of the Americas
New York, NY10104-0050
Attorneys for Defendant Warner Bros. Records, Inc.
and Undertaking Party Warner Music Inc.


Dated: _____, 2010          GREENBERG TRAURIG LLP


_____

Ian C. Ballon
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Attorneys for Defendant Demand Media, Inc.


Dated: _December 3_, 2010          VIACOM INC.


_____

By: Michael Fricklas
Executive Vice President,
General Counsel and Secretary


Dated: _____, 2010          THE WALT DISNEY COMPANY


_____

By: Marsha Reed
Vice President, Governance Admin. &
Assistant Secretary


Dated: _____, 2010          NEWS CORPORATION


_____

By: Ellen Agress
Senior Vice President and Deputy
General Counsel


Settlement Agreement                    28

Dated: _____, 2010     MORRISON & FOERSTER LLP

_____

Sherman W. Kahn
1290 Avenue of the Americas
New York, NY10104-0050
Attorneys for Defendant Warner Bros. Records, Inc.
and Undertaking Party Warner Music Inc.

Dated: _____, 2010     GREENBERG TRAURIG LLP

_____

Ian C. Ballon
2450 Colorado Avenue, Suite 400E
Santa Monica, CA 90404
Attorneys for Defendant Demand Media, Inc.

Dated: _____, 2010     VIACOM INC.

_____

By: Michael Fricklas
Executive Vice President,
General Counsel and Secretary

Dated: December 3, 2010     THE WALT DISNEY COMPANY

_____

By: Marsha Reed
Vice President, Governance Admin. &
Assistant Secretary

Dated: _____, 2010     NEWS CORPORATION

_____

By: Ellen Agress
Senior Vice President and Deputy
General Counsel

Dated: _____, 2010  MORRISON & FOERSTER LLP

            _____

            Sherman W. Kahn
            1290 Avenue of the Americas
            New York, NY 10104-0050
            Attorneys for Defendant Warner Bros. Records, Inc.
            and Undertaking Party Warner Music Inc.

Dated: _____, 2010  GREENBERG TRAURIG LLP

            _____

            Ian C. Ballon
            2450 Colorado Avenue, Suite 400E
            Santa Monica, CA 90404
            Attorneys for Defendant Demand Media, Inc.

Dated: _____, 2010  VIACOM INC.

            _____

            By: Michael Fricklas
            Executive Vice President,
            General Counsel and Secretary

Dated: _____, 2010  THE WALT DISNEY COMPANY

            _____

            By: Marsha Reed
            Vice President, Governance Admin. &
            Assistant Secretary

Dated: _Dec. 3_, 2010  NEWS CORPORATION

            _____

            By: Ellen Agress
            Senior Vice President and Deputy
            General Counsel

Dated: <u>Dec. 3</u>, 2010          KAMBERLAW, LLC

Scott A. Kamber
David A. Stampley100 Wall Street, 23rd Floor
New York, NY 10005
Class Counsel, on behalf of Plaintiffs
individually and on behalf of the Class

# Exhibit A.1

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE QUANTCAST<br>ADVERTISING COOKIE LITIG. | )<br>)<br>)<br>) No. 2:10-cv-05484-GW<br>) |
| IN RE CLEARSPRING<br>FLASH COOKIE LITIG. | )<br>)<br>) No. 2:10-cv-05948-GW<br>)<br>) |

## [PROPOSED] HEARING ORDER

Upon the motion of plaintiffs A.A., a minor, by and through her parent Guardian Ad Litem, Jose Aguirre; Jennifer Aguirre; Alan Bonebrake; Alejandro Godoy; Byron Griffith; J.H., a minor, by and through his parent, Guardian Ad Litem, Jeff Hall; R.H., a minor by and through her parent Guardian Ad Litem, Jeff Hall; Mary Huebner; Erica Intzekostas; Jose Marquez; Kira Miles; Toni Miles; Terrie J. Moore; Austin Muhs; David Rona; Brittany Sanchez; Edward Valdez; Gerardo Valdez; Kayla Valdez; and Brian White ("Plaintiffs") in the above-captioned class action lawsuits (the "Actions"), and defendants Quantcast Corporation ("Quantcast"); Clearspring Technologies, Inc. ("Clearspring"); American Broadcasting Companies, Inc.; Demand Media, Inc.; ESPN, Inc.; Fox Entertainment Group; Hulu, LLC; JibJab Media, Inc.; MTV Networks, a division of Viacom International Inc.; MySpace, Inc.; NBC Universal, Inc; Scribd, Inc.; Soapnet, LLC; Walt Disney Internet Group; and Warner Bros. Records Inc. ("Defendants," with Plaintiffs and Defendants collectively referred to herein as the "Parties"); with reference to the Settlement Agreement among the Parties, dated _____, and exhibits thereto (the "Settlement Agreement"); and upon all prior proceedings conducted in these Actions, this Court hereby finds that

1

1  reasonable cause exists to consider whether to approve the proposed settlement
2  set forth in the Settlement Agreement (the "Settlement") and to conduct a hear-
3  ing, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, to deter-
4  mine, *inter alia*: **(a)** whether the Settlement is fair, reasonable, and adequate, and
5  whether it should be approved pursuant to Rule 23 of the Federal Rules of Civil
6  Procedure; and **(b)** whether the application of Plaintiffs' counsel for an award of
7  attorneys' fees and reimbursement of expenses and Plaintiffs' request for the
8  payment of incentive awards should be granted,

9      **IT IS HEREBY ORDERED**, that:

10      1.    The Court, for settlement purposes only, hereby condition-
11  ally certifies pursuant to Rule 23(a) and Rules 23(b)(2) and 23(b)(3) of the
12  Federal Rules of Civil Procedure, a class consisting of all persons in the United
13  States who, during the Class Period, used any web browsing program on any
14  device to access one or more web sites or online content controlled, operated or
15  sponsored by Defendants; Undertaking Parties News Corporation, Viacom Inc.,
16  The Walt Disney Company, or Warner Music Inc. or subsidiaries of affiliates
17  thereof; or any other internet site employing any of Clearspring's or Quantcast's
18  technologies involving the use of HTTP "cookies" ("Cookies") or local shared
19  objects stored in Adobe Flash Media local storage ("LSOs").

20      2.    The Court finds, with respect to the non-conduct-based por-
21  tions of the Settlement Agreement (*i.e.,* all those except as stated in Section
22  IV.G of the Settlement Agreement) that: (a) the number of Settlement Class
23  Members is so numerous that joinder of all members thereof is impracticable;
24  (b) there are questions of law and fact common to the Settlement Class; (c) the
25  claims of the named representatives are typical of the claims of the Settlement
26  Class they seek to represent; (d) the Plaintiffs will fairly and adequately repre-
27  sent the interests of the Settlement Class; (e) the questions of law and fact com-
28  mon to the Settlement Class predominate over any questions affecting only

individual members of the Settlement Class; and (f) a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

3.      The Court finds, with respect to the conduct-based portions of the Settlement Agreement specified in Section IV.G, that: (a) the number of Settlement Class Members is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of the named representatives are typical of the claims of the Settlement Class they seek to represent; (d) the Plaintiffs will fairly and adequately represent the interests of the Settlement Class; and (e) the Defendants allegedly have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final conduct-based relief or corresponding declaratory relief with respect to the class as a whole, if the Settlement Agreement receives final approval.

4.      A.A., a minor, by and through her parent Guardian Ad Litem, Jose Aguirre; Jennifer Aguirre; Alan Bonebrake; Alejandro Godoy; Byron Griffith; J.H., a minor, by and through his parent, Guardian Ad Litem, Jeff Hall; R.H., a minor by and through her parent Guardian Ad Litem, Jeff Hall; Mary Huebner; Erica Intzekostas; Jose Marquez; Kira Miles; Toni Miles; Terrie J. Moore; Austin Muhs; David Rona; Brittany Sanchez; Edward Valdez; Gerardo Valdez; Kayla Valdez; and Brian White, are appointed representatives of the Settlement Class.

5.      After considering the factors described in Rule 23(g)(1) and (g)(2) of the Federal Rules of Civil Procedure, the Court appoints Scott A. Kamber and David A. Stampley of KamberLaw, as Class Counsel.

6.      The Court finds that the Settlement as set forth in the Settlement Agreement falls within the range of reasonableness and warrants providing notice of such Settlement to the members of the Settlement Class and, accordingly, the Court, pursuant to Rules 23(c) and 23(e) of the Federal Rules of Civil

Procedure, preliminarily approves the Settlement upon the terms and conditions set forth in the Settlement Agreement.

7.      The Court sets a hearing to take place on _____, 2011, at _____ __.m., before this Court, at the United States Courthouse for the Central District of California, 312 North Spring Street, Los Angeles, California, to hear all interested parties on whether: (*i*) the requirements for certification of the Settlement Class have been met; (*ii*) the proposed settlement of the Actions in accordance with the terms set forth in the Settlement Agreement, including as part of the settlement the payment of Plaintiffs' Class Counsel's attorneys' fees and reimbursement of Plaintiffs' Class Counsel's expenses as well as any incentive awards to the Representative Plaintiffs, should be approved as fair, reasonable and adequate; and (*iii*) the Judgment approving the settlement and dismissing the Actions on the merits and with prejudice against Plaintiffs and Settlement Class Members should be entered (the "Fairness Hearing").  The Court may adjourn the Fairness Hearing without further notice to the members of the Settlement Class (except those Settlement Class Members who file timely and valid objections).

8.      The Court approves the form of the Legal Notice of Proposed Class Action Settlement (the "Publication Notice"), substantially in the form of Exhibit A.2 annexed to the Settlement Agreement, and approves the Notice of Pendency of Class Action and Proposed Settlement (the "Longform Notice"), substantially in the form of Exhibit A.3, annexed to the Settlement Agreement.

9.      Non-substantive changes may be made to the Full Settlement Notice and/or the Summary Settlement Notice by agreement of the Parties, without further order of this Court.

10.     The Court directs that the Settlement Class be given notice of the proposed Settlement as follows: **[to be inserted]**.

4

11.    The Court finds that such notice to the members of the Settlement Class as described above: **(a)** is the best notice practicable to members of the Settlement Class; **(b)** is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Actions, conditional certification of the Settlement Class, the proposed Settlement, and the rights of members of the Settlement Class to object to the Settlement; to request exclusion from the Settlement Class; the application of Plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses; and the application by Representative Plaintiffs for an incentive award; **(c)** is reasonable and constitutes due, adequate and sufficient notice to all persons and entities entitled to receive notice; and **(d)** meets all applicable requirements of law including, but not limited to, Rule 23(c) of the Federal Rules of Civil Procedure and the Due Process Clause of the Fourteenth Amendment of the United States Constitution.

12.    The Court directs Class Counsel and Defendant's counsel, on or before **[FILL IN DATE]**, to file with the Court evidence that the provisions of paragraphs 9 and 10 of this Order have been satisfied.

13.    The Court directs that any person or entity who is a member of the Settlement Class and who wishes to exclude himself, herself, itself, or themselves from the Settlement Class shall, in writing, by letter postmarked on or before **[FILL IN DATE]**, submit a request for exclusion that sets forth: **(a)** such person's or entity's name and address, or the name and address of the person or entity for which he, she or it is acting; and **(b)** a clear and unambiguous statement that such person or entity wishes to be excluded from the Settlement Class.  Any person or entity who fails to timely and/or properly seek exclusion from the Settlement Class as provided herein, shall be deemed members of the Settlement Class for all purposes and shall be henceforth bound by all orders and/or judgments of this Court.

14.     Any person or entity who does not timely and/or properly seek exclusion from the Settlement Class may, solely at the expense of such person or entity, be heard personally or through counsel retained by such person or entity solely at the cost of such person or entity, on: (a) whether the Settlement is fair, reasonable, and adequate to Settlement Class members and whether the proposed Settlement should or should not be approved by the Court; and/or (b) the application of Class Counsel in the Actions for an award of attorneys' fees and/or reimbursement of expense should or should not be granted.  Any Class Member who intends to object to this Settlement must include his/her name and address, include all arguments, citations, and evidence supporting the objection and that they are a member of the Class, and provide a statement whether the objector intends to appear at the final fairness hearing, either with or without counsel.  An objection will be considered submitted if marked with a reference to In Re Quantcast Advertising Cookie Litigation, Case No. 2:10-cv-05484-GW-JCG, and/or In Re Clearspring Flash Cookie Litigation, Case No. 2:10-cv-05948-GW-JCG and mailed to one of the following: the Court—Clerk of the United States District Court, Central District of California, 312 North Spring St., Los Angeles, CA 90012; to Class Counsel—KamberLaw, LLC, ℅ Flash Cookies Class Action Settlement, ATTN: Scott A. Kamber, 100 Wall St., 23rd Floor,  New York, NY 10005; and Clearspring's' Counsel—Cooley LLP, ℅ Clearspring Class Action Settlement, ATTN: Michael Rhodes,101 California St., Fifth Floor, San Francisco, CA 94111.  It shall be the objector's responsibility to ensure receipt of any objection by the Court, Class Counsel or Defendants' Counsel.

15.     The Parties shall, by **[FILL IN DATE]**, file and serve all papers in support of the application for final approval of the Settlement, including the provision for payment of attorneys' fees, reimbursement of expenses and an award of to Representative Plaintiffs.

16.     The Parties shall, by **[FILL IN DATE]**, file and serve all papers in response to any valid and timely objections received by the designated counsel for the Parties identified in the Full Settlement Notice.

17.     The Court directs that, on or before **[30 days prior to objector deadline]**, Class Counsel shall submit to the Court their proposed plan for allocating and distributing the Net Settlement Fund.

18.     It shall be Defendants' responsibility to prepare and provide the notices required by the Class Action Fairness Act of 2005, Pub. L. 109-2 (2005), including, but not limited to, the notices to the United States Department of Justice and to the Attorneys General of all states in which Settlement Class members reside, as specified in 28 U.S.C. § 1715.  Plaintiffs' Class Counsel shall cooperate in the drafting of such notices and shall provide Defendants with any and all information in their possession necessary for the preparation of these notices.

19.     Reference is made to (i) the 2008 Network Advertising Initiative Principles (the "NAI Principles"); and (ii) the "Self Regulatory Principles for Online Behavioral Advertising" available at http://www.iab.net/media/file/ven-principles-07-01-09.pdf (the "Self-Regulatory Principles").

20.     No later than thirty (30) days after entry of this Order, the Undertaking Parties shall send a request to at least one of the industry groups charged with receiving comments to the Self-Regulatory Principles that those Self-Regulatory Principles should be amended to include express prohibitions on the use of LSOs, or any similar technology, to regenerate, without disclosure, HTTP cookies that a user affirmatively deleted. Additionally, the Undertaking Parties shall request that the Self-Regulatory Principles be amended to include guidance to member firms that LSOs should not be used without disclosure as an alternative method to HTTP cookies for storing information about a user's

web browsing history across unaffiliated domains, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content. If an Undertaking Party is a member of the Network Advertising Initiative, the Undertaking Party also shall inform the Network Advertising Initiative of its preference that the NAI Principles be similarly amended.

21.    Plaintiffs and all members of the Settlement Class and any other person, representative, or entity acting on behalf of any members of the Settlement Class are, until the Fairness Hearing, barred and enjoined from filing, commencing, prosecuting, maintaining, intervening in, participating in (as members of a class action or otherwise), any claim, lawsuit, arbitration, administrative, regulatory or other proceeding arising out of the Released Claims against any of the Released Parties. The Court finds that issuance of this preliminary injunction is necessary and appropriate in aid of the Court's jurisdiction over the Actions and to protect and effectuate the Court's review of the Settlement.

22.    If for any reason, the Effective Date of the Settlement does not occur, this Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions as of December 8, 2010, except that any extensions of time granted since that date by one Party to the other shall continue to have force and effect, and neither Party shall seek an order of default against any other Party for actions not taken while approval of the Settlement was pending, and the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders issued in connection with consideration of the Settlement, including this Order, shall be used or referred to in any litigation for any purpose whatsoever, except as required to enforce those provisions of the Settlement Agreement which

1    survive a failure of the Settlement to be consummated or the Effective Date of

2    the Settlement to occur.

3         23.    Nothing in this Order shall be construed or used as an admis-

4    sion, concession, or declaration by or against any Defendant or Undertaking

5    Party for any fault, wrongdoing, breach or liability. Nor shall this Order be

6    construed or used as an admission, concession, or declaration by or against

7    Plaintiffs or the members of the Settlement Class that their claims lack merit or

8    that the relief requested in the operative Complaints in these Actions is inappro-

9    priate, improper, or unavailable, or as a waiver by any party of any defenses or

10   claims he, she, or it may have; nor shall this Order be construed as a finding or

11   conclusion of the Court with respect to the merit or lack of merit of any claim

12   asserted in the Actions or the defense to any Claim asserted in the Actions.

13        24.    The Court retains exclusive jurisdiction over the Action to

14   consider all further matters arising out of or connected with the Settlement.

15

16   Dated: December __, 2010        **SO ORDERED, ADJUDGED AND DECREED**

17

18                                   _____

18                                   George H. Wu

19                                   Judge Of The United States District Court

20

21

22

23

24

25

26

27

28

9

# Exhibit A.2

# LEGAL NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

## THIS IS NOT AN ADVERTISEMENT OR ATTORNEY SOLICITATION.

**THIS NOTICE MAY CONCERN YOUR LEGAL RIGHTS IF YOU ACCESSED AN INTERNET SITE OPERATED OR SERVICED BY DEMAND MEDIA, INC., HULU, LLC, JIBJAB MEDIA, INC., NBC UNIVERSAL, INC., NEWS CORP., SCRIBD, INC., VIACOM INC.., THE WALT DISNEY CO. OR WARNER BROS. RECORDS, OR ANY INTERNET SITE EMPLOYING QUANTCAST OR CLEARSPRING TECHNOLOGIES, BETWEEN JUNE 1, 2008 and _____.**

**IF YOU ARE A MINOR, IMMEDIATELY GIVE THIS NOTICE TO YOUR PARENT OR LEGAL GUARDIAN.**

---

**This notice is being published because a settlement has been proposed by all parties in the following class action matters pending in the United States District Court, Central District Of California, Western Division:**

**In Re Quantcast Advertising Cookie Litig., No. 2:10-cv-05484-GW**     **In Re Clearspring Flash Cookie Litig., No. 2:10-cv-05948-GW**

## WHAT'S THIS NOTICE FOR?

This notice is being published by order of the Court, before the Court considers final approval of the proposed settlement.

- This notice is to inform you of actions you may take in response to the proposed settlement.
- Your choices are: (1) do nothing; (2) opt out of the proposed settlement; or (3) object to the proposed settlement. If you choose to object to the proposed settlement or opt out of the proposed settlement, you must follow certain procedures.
- In addition, you may attend the Court's hearing about the proposed settlement.

This notice summarizes some of the information related to the proposed settlement. For more details, go to

_____.

## WHAT ARE THESE LAWSUITS ABOUT?

Quantcast Corporation, Clearspring Technologies, Inc. and other companies deposited browser "cookies" and Adobe Flash local shared objects (LSOs) on users' computers when those users visited certain web sites. LSOs were deposited when users' had set their browsers to block cookies and, in some cases, the use of LSOs resulted in the recreation of browser cookies after users had deleted them.

The Plaintiffs filed these class action lawsuits alleging that the Defendants and their affiliates did not give users adequate notice and choice about presence of these cookies and the collection of personal information. The Defendants deny they did anything wrong, and the Court has not made any decision about which side was right in these lawsuits.

## WHAT DOES THE SETTLEMENT DO?

The proposed settlement would resolve these lawsuits before the Court takes a position on which side is right.

Quantcast and Clearspring represent that they do not and will not use LSOs to "respawn" browser cookies; to serve as an undisclosed alternative to cookies for tracking users unrelated to Flash Player operation and content-delivery; or to otherwise counteract users' blocking or deleting browser cookies.

*This is not a settlement in which class members will receive compensation directly.* Under the proposed settlement agreement, subject to Court review and approval, Quantcast and Clearspring will provide $2.4 million to be donated to non-profit groups engaged in research and education that promote consumer awareness and choice regarding privacy, safety, and security of their electronic information; pay attorneys' fees and costs (capped at no more than 25% of the settlement); and award a small amount to the representative plaintiffs; and administer the settlement. The other Defendants and their affiliates also are taking other, significant measures to protect users' privacy.

## AM I AFFECTED?

Quantcast and Clearspring technologies have been used on tens of thousands of web pages, and the other Defendants' websites are heavily trafficked. For these reasons, substantially all U.S. persons who have used the Internet since June 1, 2008, likely are members of the class. Clearspring LSOs can be identified by a filename of "clearspring.sol." Quantcast LSOs can be identified by filenames that include "____qca.sol" or "Quantserve."

## WHAT ARE MY OPTIONS?

***Do nothing***: If you choose to do nothing, you will be legally bound by the settlement, and you will be giving up the right to sue the Defendants or their affiliates over claims related to or arising out of the use of LSOs.

***Opt out***: If you do not want to be legally bound by the settlement, you must exclude yourself by [date] or you will not be able to sue the Defendants and their affiliates for the claims listed in the settlement agreement. To opt out, you *must* mail your original, signed exclusion request to:

> *Class Counsel*: KamberLaw, LLC,
> % Flash Cookie Class Action Settlement, Attn: Scott Kamber, 100 Wall Street, 23nd Floor, New York, NY 10005
>
> *Clearspring's Counsel*: Cooley LLP,
> % Clearspring Class Action Settlement, Attn: Michael Rhodes, Cooley LLP, 101 California, 5th Fl., San Francisco, CA  94111

***Object***: If you wish to object to the terms of the settlement, you *must* file your objection no later than [date] with:

> Clerk's Office, U.S. District Court, Central District of California, 312 N. Spring Street, Los Angeles, CA 90012

You also should send a copy of your objection and any related papers to at least one of the parties' counsel listed above for receipt no later than [date].

Only persons over 18 may object to or comments on the Settlement or exclude themselves or dependent minors from the settlement.

***Attend the settlement hearing***: On [date], the Court will hold a hearing to consider granting final approval to the proposed settlement. You may comment in support of or in opposition to the proposed settlement, but you do not have to attend the hearing and, if you do choose to attend the hearing, you do not have to speak at the hearing.

**For a full copy of the Notice of Settlement and details on required procedures, deadlines, and your options and obligations, visit [website_____**

# Exhibit A.3

## IMPORTANT COURT-ORDERED NOTICE—PLEASE READ

**THIS NOTICE SUMMARIZES THE TERMS OF A PROPOSED CLASS ACTION SETTLEMENT UNDER WHICH YOU MAY HAVE CERTAIN LEGAL RIGHTS.**

**IF YOU ARE A MINOR, ONLY YOUR PARENT OR GUARDIAN MAY INTERPOSE OBJECTIONS OR COMMENTS TO THE SETTLEMENT ON YOUR BEHALF OR EXCLUDE YOU FROM THE SETTLEMENT.**

**SUBJECT:** Notice of Pendency of Related Class Actions and Proposed Settlement in the U.S. District Court, Central District Of California, Western Division, including *In Re Quantcast Advertising Cookie Litigation*, Case No. 2:10-cv-05484-GW-JCG and *In Re Clearspring Flash Cookie Litigation*, Case No. 2:10-cv-05948-GW-JCG

**DATE:** December __, 2010

Introduction .................................................................................. 2

The Lawsuits ................................................................................ 2

    A.  What is a Class Action? ........................................................ 2
    B.  What Lawsuits and Parties are Related to this Settlement? ........... 2
    C.  What are the Lawsuits About? ................................................ 3

Class Membership ........................................................................ 4

    A.  Who is In the Class? ............................................................ 4
    B.  How Do I Know if I Am a Class Member? .................................. 5

The Settlement ............................................................................. 5

    C.  What Does the Settlement Accomplish for the Class? ................... 5
    D.  What Do the Defendants Obtain from the Settlement? ................... 7

Class Members' Options ............................................................... 7

    E.  What Do I Give Up by Participating in the Settlement? ................. 7
    F.  Who Represents Me and How are They Paid? .............................. 7
    G.  What if I Do Not Want to Participate in the Settlement? ................ 8
    H.  How Can I Comment in Support of or in Opposition to the Settlement? ....... 8
    I.  Can I Attend the Settlement Hearing? Do I Have to Attend? ......... 9

For Other Details about the Settlement ......................................... 9

Court Order For Publication Of This Notice .................................. 10

**Full details available at www._____.com**

# INTRODUCTION

This Notice of Pendency of Related Class Actions and Proposed Settlement (the "Notice") is to provide you information about a settlement proposed by the parties in two related, consolidated class action Lawsuits (the "Lawsuits"). The class action Lawsuits affected by the proposed Settlement are pending before one federal judge (the "Judge" or the "Court"), who has determined that these Lawsuits are related to each other.

Based on the Lawsuits' common issues, the parties have negotiated a single Stipulation and Agreement of Settlement (the "Settlement Agreement") which they have submitted to the Court for review and approval. As part of the review process, the Court has ordered that this Notice be issued to provide information to persons whose legal rights would be affected if the Court were to approve the Settlement Agreement and order that it be carried out (a "Settlement"). The information in this Notice summarizes:

- What Lawsuits are addressed by the Settlement Agreement
- What claims, issues, and defenses raised by the parties to the Lawsuits
- Who is a Class Member and how the Settlement affects Class Members' legal rights

The proposed settlement would resolve these Lawsuits before the Court takes a position on which side is right. Under the proposed agreement, Quantcast and Clearspring will commit to certain practices regarding their uses of browser cookies and Adobe local shared objects (LSOs, or "Flash cookies"). The other Defendants and their affiliates also are taking other, significant measures to help users protect their privacy.

This is not a settlement in which class members receive compensation directly. Under the proposed agreement, in addition to their agreement to follow certain practices, Quantcast and Clearspring will pay $2.4 million to advance the interests of consumers' online privacy, pay reasonable attorneys' fees and costs, pay incentive awards to recognize the representative Plaintiffs' efforts, and administer the settlement.

# THE LAWSUITS

## A.   What is a Class Action?

In a class action, one or more people called class representatives sue on behalf of a larger number of people whom they believe have similar claims.Each person who is part of a class is called a class member.A single court resolves the issues for all class members at the same time.

## B.   What Lawsuits and Parties are Related to this Settlement?

The two consolidated actions that would be resolved by the proposed Settlement are:

- *In Re Quantcast Advertising Cookie Litigation*, Case No. 2:10-cv-05484-GW-JCG
- *In Re Clearspring Flash Cookie Litigation*, Case No. 2:10-cv-05948-GW-JCG

**Full details available at www._____.com**

The two defendants named in the captions of the consolidated cases, Quantcast Corporation ("Quantcast") and Clearspring Technologies, Inc. ("Clearspring"), are online third-party service providers. They provide ad delivery and web traffic analysis services on consumer-facing websites, such as those of the other Defendants.

The other Defendants—whose names do not appear in the captions of the Lawsuits (when referred to excluding Quantcast and Clearspring, "the Other Defendants")—are the owners or sponsors of consumer-facing websites or online content whose websites or content were allegedly visited or utilized by the representative plaintiffs in the Lawsuits (the Plaintiffs"). These Defendants are:

> American Broadcasting Companies, Inc.; Demand Media, Inc.;
> ESPN, Inc.; Fox Entertainment Group, Inc.; Hulu, LLC; JibJab Media, Inc.;
> MTV Networks; MySpace, Inc.; NBC Universal, Inc.; Scribd, Inc.;
> Soapnet, LLC; Walt Disney Internet Group; and Warner Bros. Records Inc.

Some of these Defendants' corporate affiliates have elected to participate in the Settlement:

> News Corporation, an affiliate and the ultimate parent of
> Fox Entertainment Group, Inc. and MySpace, Inc.
>
> Viacom Inc., of which MTV Networks is a division of a subsidiary,
> Viacom International Inc.
>
> The Walt Disney Company, of which American Broadcasting Companies, Inc.,
> ESPN, Inc., Soapnet, LLC and Walt Disney Internet Group are subsidiaries
>
> Warner Music Inc., of which Warner Bros. Records Inc. is an affiliate

Collectively, these corporate affiliates of the Other Defendants are referred to as "Undertaking Parties" in the Settlement Agreement. The Undertaking Parties have many customers, subsidiaries and affiliates, all of which are part of this Settlement.

## C.   What are the Lawsuits About?

Quantcast and Clearspring provide services to many websites, including those owned or sponsored by the Undertaking Parties. Quantcast's and Clearspring's services include displaying targeted advertisements to website visitors, analyzing website traffic, and providing technology that other companies can use to interact with consumers browsing the web. For consumers visiting a website, Quantcast and Clearspring are considered "third parties" that provide services to the websites. Many of the websites are supported by advertising and many of them monitor visitor activity to assess the popularity of their web pages. Because Quantcast and Clearspring provide advertising and measurement services to those websites, consumers who visit those websites are brought into direct contact with Quantcast and Clearspring, even though the consumers may not be aware of it.

Like many other online, third-party service providers, Quantcast and Clearspring store and read browser cookies on the computers of website visitors, as part of the process of serving advertisements and collecting information for web analytics. Users who do not want thirdparties' cookies can set their browser controls to block third-party cookies. Users can also delete previouslystored, third-party cookies.

In addition to using browser cookies, Quantcast and Clearspring, like some other third-party service providers, used Adobe Flash local shared objects ("LSOs," which have also been called "Flash Cookies") in their interactions with website visitors. Adobe Corporation has stated thatLSOs were designed to support consumers' ability to experience "rich Internet application" content usingthe

Adobe Flash Player. Plaintiffs allege that Quantcast and Clearspring stored LSOs on users' computers to collect information from and about users—even users who had set their browser privacy settings to block third-party cookies. Plaintiffs also allege that, in some cases, if users had deleted third-party cookies, the use of LSOs resulted in the recreation(sometimes referred to as "respawning") of the deleted cookies. Quantcast and Clearspring do not concede that Plaintiffs' factual contentions are accurate.

The class action complaints filed by the Plaintiffs alleged the Defendants used LSOs to circumvent users' blocking or deleting Quantcast and Clearspring browser cookies. The Plaintiffs claimed they did not receive adequate notice or choice about the use of LSOs and that the Defendants' actions violated the Plaintiffs' privacy rights. The complaints, taken together, alleged the Defendants' practices violated the following federal statutes, California statutes, and common-law legal rights: the Computer Fraud and Abuse Act, Title 18, United States Code 1030; the Electronic Communications Privacy Act, Title 18, United States Code, Section 2510; the Video Privacy Protection Act, Title 18, United States Code, Section 2710; the Computer Crime Law, California Penal Code, Section 502; the Invasion of Privacy Act, California Penal Code, Section 630; the Unfair Competition Law, California Business and Professions, Section 17200; the Consumer Legal Remedies Act, California Civil Code, Section 1750; the California Uniform Trade Secrets Act, California Civil Code, Section 3426; Trespass to Personal Property/Chattels; and Unjust Enrichment.

The Defendants and the Undertaking Parties have denied any and all wrongdoing whatsoever and the Court has not made any decision about whether the outcomes of any of the Lawsuits would be partly or wholly in favor of the Plaintiffs or the Defendants. The fact that the Court has ordered that this Notice be provided does not mean the Court has taken any position on the merits of the Lawsuits. It means that the Court, instead of moving solely toward a trial, is also willing to consider the Plaintiffs' and Defendants' request to consider the alternative path of concluding the Lawsuits by settling them.

# CLASS MEMBERSHIP

## A.  Who is In the Class?

You are a member of the proposed class (the "Class") if, during the period of June 1, 2008 through [preliminary approval date], you used any web browsing program on any device to access one or more web sites or view online content controlled, operated or sponsored by the Defendants or the Undertaking Parties or any of the Undertaking Parties subsidiaries or affiliates or any other web site employing any of Clearspring's or Quantcast's technologies involving the use of HTTP (browser) cookies or Adobe Flash LSOs.

Excluded from the Class are: any judicial officer to whom this Litigation is assigned; the Defendants and Undertaking Parties, and any of their current or former employees, officers, or; any persons currently residing outside of the United States; and all persons who timely and validly request exclusion from the Class pursuant to this Notice.

**Full details available at www._____.com**

## B.   How Do I Know if I Am a Class Member?

Persons who fall within the class definition cited above and who do not take steps to exclude themselves from the class are referred to as 'Class Members."

**Quantcast and Clearspring represent that their technologies have been used on tens of millions of webpages and, therefore, they believe the Class consists of substantially all Internet users in the United States.**

You are certainly a Class Member if, during the Class Period, you had loaded onto your computer or device an Adobe Flash LSO file that:

–   originated from *http://www.clearspring.com*
–   is named *clearspring.sol*
–   has a name that includes *–qca*
–   has a name that includes *quantserve*

You also are a member of the Class if you visited any website or used any other online content operated or serviced by Demand Media, Inc., Hulu, LLC, JibJab Media, Inc., NBC Universal, Inc., News Corporation, Scribd, Inc., Viacom, Inc., The Walt Disney Company and Warner Music Inc, or any of their customers, subsidiaries or affiliates. These companies collectively operate or service thousands of websites, many of which show their affiliation with their parent companies.

Information about News Corporation's subsidiaries and affiliates can be found at http://www.newscorp.com/investor/download/10-K2010_Exhibit21.pdf.

Information about many of Viacom's affiliates can be found at http://www.sec.gov/Archives/edgar/data/1339947/000119312510028165/d10k.htm.

Information about many of the The Walt Disney Company's subsidiaries and affiliates can be found at http://sec.gov/Archives/edgar/data/1001039/000119312510268910/dex21.htm.

Information about Warner Bros. Records Inc.'s parent companies, affiliates and subsidiaries can be found at http://www.sec.gov/Archives/edgar/data/1319161/000119312510262567/dex211.htm.

## THE SETTLEMENT

The Representative Plaintiffs and their attorneys believe the Settlement is in the best interests of the Class. In addition, all parties to the Lawsuits believe the Settlement benefits Class Members as well as the Defendants and Undertaking Parties by avoiding the uncertainties and costs of a trials and, potentially, appeals.

The full text of the Settlement Agreement is contained in a document entitled "Stipulation and Agreement of Settlement," which is available in the Court's file in the Lawsuits and is also available at _____.

## C.   What Does the Settlement Accomplish for the Class?

As of the date of this Notice, the Court presiding over the Lawsuits has not made a decision regarding final approval of the Settlement. The proposed Settlement provides for the following relief.

**Full details available at www._____.com**

### Injunctive Relief as to Quantcast and Clearspring

Under the Settlement Agreement, Quantcast and Clearspring have stated and agreed that they do not presently, and will not in the future employ LSOs to:

- ▪ "respawn" HTTP (browser) cookies;

- ▪ serve as an alternative method to HTTP cookies for storing information about a user's web browsing history, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content, without adequate disclosure; and/or

- ▪ otherwise counteract any computer user's decision to either prevent the use of or to delete previously created HTTP cookies.

### Injunctive Relief as to the Undertaking Parties

The Undertaking Parties have agreed that:

- ▪ Regarding the 2008 *Network Advertising Initiative Principles* (the "NAI Principles") and the Interactive Advertising Bureau's *Self Regulatory Principles for Online Behavioral Advertising*:

  The Undertaking parties will request that those Principles be amended to (i) include express prohibitions on the use of LSOs or any similar technology to regenerate, without disclosure, HTTP cookies that a user affirmatively deleted; and (ii)include guidance to member firms that LSOs should not be used without disclosure as an alternative method to HTTP cookies for storing information about a user's web-browsing history across unaffiliated domains, unrelated to the delivery of content through the Flash Player or the performance of the Flash Player in delivering such content.

  If an Undertaking Party has decision-making authority in any of the above-mentioned bodies, that Undertaking Party will use its decision-making authority to attempt to effect such preferences.

- ▪ Each Undertaking Party will, in its online Privacy Policy or an opt-out page clearly linked thereto, maintain a link to one of several tools that exist or are in development to assist consumers in opting out of certain online behavioral advertising.

- ▪ Undertaking Parties that use LSOs themselves also will clearly disclose that fact, provide a link from their Privacy Policies to a third-party tool allowing users to manage LSOs, and advise users if any aspect of their websites, widgets, or application components may not maintain its or their full user functionality unless the user's settings permit full acceptance of LSOs.

- ▪ Each Undertaking Party will establish an email address or other online reporting mechanism to which members of the public can send any privacy-related concerns respecting the operation of the Undertaking Party's websites.

- ▪ These provisions will remain in effect until June 30, 2013. Full details about them can be found in Section 4 of the Settlement Agreement, which you can review at [insert].

### Monetary Relief

As part of the Settlement, Quantcast and Clearspring will create a Settlement Fund of $2.4 million. The majority of the Settlement Fund will be dedicated to "*cy pres*" relief—money that will be donated one or more non-profit organizations to fund research and education projects and activities to

**Full details available at www._____.com**

promote consumer awareness and choice regarding the privacy, safety, and security of electronic information from and about consumers. The Settlement Fund will also be used to pay for the costs of administering the settlement (such as notice costs) and, as approved by the Court, attorneys' fees and incentive awards to the Representative Plaintiffs.

## D.   What Do the Defendants Obtain from the Settlement?

In consideration for the injunctive relief and Settlement Fund payment being provided in the Settlement, the cases against Quantcast, Clearspring, and the Other Defendants will be dismissed with prejudice. They, along with the Undertaking Parties and the Undertaking Parties subsidiaries and affiliates, will be released from any and all liability arising out of or relating to the claims and allegations in the Lawsuits. For activities up to the date of the Court's final approval of the Settlement, the releases extend to Quantcast's and Clearspring's customers other than the Defendants and Undertaking Parties (for example, other websites that used Quantcast or Clearspring technologies). For the Undertaking Parties, the releases further extend to other claims, including claims relating to the use of LSOs and similar technologies on websites or other online content owned, operated or sponsored by them, and claims that they tracked users, shared their information, or displayed advertising to them without sufficient notice.

# CLASS MEMBERS' OPTIONS

## E.   What Do I Give Up by Participating in the Settlement?

If you do nothing, you will be deemed to be a Class Member and to have accepted the Settlement and any decisions of the Court with respect to the Settlement and the Lawsuits. You will be represented by the Representative Plaintiffs and Class Counsel for purposes of the Settlement, (unless you choose to hire your own lawyer at your own expense to represent you in the Lawsuits). You will not be able to sue or be part of any other lawsuit against Quantcast, Clearspring, the Other Defendants, Undertaking Parties and their subsidiaries and affiliates, or certain other release persons, regarding the legal issues in this case.

## F.   Who Represents Me and How are They Paid?

The Representative Plaintiffs filed their class action complaint on behalf of themselves, as individuals, and on behalf of "all persons similarly situated"—that is, the Class. To provide legal representation to the Class, the Court has appointed the attorneys of KamberLaw, LLC. The Kamber-Law attorneys representing the Plaintiffs and Class Members in the Lawsuits are Scott A. Kamber and David A. Stampley.

From the inception of the Lawsuits, Class Counsel have not received any payment for their services in bringing or prosecuting these cases and they have not been reimbursed for any out-of-pocket expenses. If the Court approves the Settlement, Class Counsel will ask the Court to award attorneys' fees and reimbursement of costs and expenses in an amount not to exceed $600,000.These amounts will come from the amounts that Quantcast and Clearspring have agreed to pay to resolve this dispute. Please see the Settlement Agreement for further information on any attorneys' fees or expense award that may be sought by Class Counsel.

**Full details available at www._____.com**

Class Counsel will also request that the Court authorize the payment of incentive awards to the Representative Plaintiffs for appropriate compensation for their time and effort serving as the Representative Plaintiffs. Such awards as may be granted by the Court will be paid from the Settlement Fund. Class Counsel's requests for fees and incentive awards will be heard at the Settlement hearing described below.

If you want to be represented in the Lawsuits by your own attorney, you may hire one at your own expense and you may appear in this litigation through your own attorney.

## G.   What if I Do Not Want to Participate in the Settlement?

If you do *not* want to remain a member of the Class and participate in the Settlement, then you may exclude yourself, or **opt out**, from the Class by mailing or delivering your written request (email is not permitted), to either or both of the attorneys listed below:

| **Class Counsel** | **Clearspring's Counsel** |
|---|---|
| KamberLaw, LLC | Cooley LLP |
| ℅ Flash Cookies Class Action Settlement | ℅ Clearspring Class Action Settlement |
| ATTN: Scott A. Kamber | ATTN: Michael Rhodes |
| 100 Wall St., 23rd Floor | 101 California St., Fifth Floor |
| New York, NY 10005 | San Francisco, CA  94111 |

**Your original, signed request for exclusion must be received on or before[DATE].**

## H.   How Can I Comment in Support of or in Opposition to the Settlement?

### How to Object

Objecting is simply telling the Court that you do not like the Settlement or any aspect of the Settlement. You can object only if you are a member of, and do not exclude yourself from, the Class.

**If you wish to object to the terms of the settlement,** your written comments *must contain your name and address*, be *signed* by you, and include the reference:

- *In Re Quantcast Advertising Cookie Litigation*, Case No. 2:10-cv-05484-GW-JCG, and/or
- *In Re Clearspring Flash Cookie Litigation*, Case No. 2:10-cv-05948-GW-JCG

You may file your objection with the Court at the following address:

> Clerk of the United States District Court
> Central District of California
> 312 North Spring St.
> Los Angeles, CA 90012

Alternatively, you can send your objection to either or both of the attorneys listed above, who will cause your objection to be filed with the Court.If you choose to send your objection to counsel, however, it is your responsibility to ensure that counsel receive your objection.

**Counsel or the Court must receive your objection no later than [DATE].**

If you do not comply with these procedures and deadlines for submitting objections, you will not be entitled to object, speak at the hearing, or contest in any way the Settlement or the Court's deci-

**Full details available at www._____.com**

sion on applications for attorneys fees and awards, and you will not be able to contest any other orders or judgments that the Court may enter in connection with the Settlement.

## How to Comment

If you decide to remain in the Class (*i.e.*, you do not opt out), and you want the Court to receive your comment in support of or in opposition to the Settlement or Class Counsel's Fee Application, you mustfollow the same procedure described above for lodging an objection (*i.e.,* by filing your comment with the Court or mailing it to counsel, making sure your comment contains your name and address, is signed by you, and includes a reference to the case about which you are writing).

**Counsel or the Court must receive your comment no later than [date].**

| I. | Can I Attend the Settlement Hearing? Do I Have to Attend? |
|---|---|

The Court will hold a hearing on [DATE] at [TIME], before the Honorable George H. Wu, United States District Judge for the Central District of California, 312 North Spring Street, Los Angeles, California90012. The Court reserves the right to adjourn or continue the Settlement hearing without further notice to the Class, except for those who filed objections.

The purpose of the hearing will be to determine: (a) whether the proposed Settlement should be approved as fair, reasonable and adequate; (b) whether the Class should be certified for purposes of the Settlement; (c) whether Class Counsel's Fee Application should be granted and in what amount; (d) whether the Representative Plaintiffs should be compensated and in what amount; and (e) whether the Lawsuits and Class Members' claims should be dismissed with prejudice pursuant to the Settlement.

*You are not required to attend the hearing in order to participate in the Settlement* nor do you have to attend the hearing for the Court to consider your objection or other written comment. Your objection or comment will be submitted to the Court as long as you follow the objection or comment procedures set forth above.

However, you may attend the Settlement hearing at your own expense if you wish. You may also ask your own lawyer to attend on your behalf, at your expense. If you intend to appear and speak at the hearing, in person or through your own lawyer, you *must* provide your written statement of your intent to appear with your comment or objection, following the procedure described above.

## FOR OTHER DETAILS ABOUT THE SETTLEMENT

This Notice contains only a summary of certain provisions in the Settlement. The full terms and provisions of the Settlement are contained in the Settlement Agreement. A copy of the Settlement Agreement is on file with the Court and can be viewed through the following link: [website]. The Clerk of the Court, located at 312 North Spring Street, Los Angeles, California 90012, maintains files containing the Settlement Agreement and all other documents filed in the lawsuit. Copies of these documents are available for inspection and copying during the Court's normal business hours.

**Do not contact Quantcast, Clearspring, or any other Defendant or Undertaking Party about the Lawsuits, this Notice, or the Settlement**. They and their employees are not

**Full details available at www._____.com**

permitted to give you legal advice or answer your questions about the Lawsuits, this Notice, or the Settlement.

***Do not telephone the Court about the Lawsuits, this Notice, or the Settlement***.
To contact the Court, you must follow the procedures in sectionH, above.

## Court Order For Publication Of This Notice

**Dated:** _____       **BY ORDER OF:**

                                   _____

**George H. Wu**
**Judge Of The United States District Court**

**Full details available at www._____.com**

# Exhibit A.4

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

IN RE QUANTCAST
ADVERTISING COOKIE LITIG.

No. 2:10-cv-05484-GW-JCG

IN RE CLEARSPRING
FLASH COOKIE LITIG.

No. 2:10-cv-05948-GW-JCG

### [PROPOSED] FINAL ORDER AND JUDGMENT

**WHEREAS** Defendants American Broadcasting Companies, Inc.; Demand Media, Inc.; ESPN, Inc.; Fox Entertainment Group; Hulu, LLC; JibJab Media, Inc.; MTV Networks, a division of Viacom International Inc.; MySpace, Inc.; NBC Universal, Inc; Scribd, Inc.; Soapnet, LLC; Walt Disney Internet Group; and Warner Bros. Records Inc. ("Defendants"); News Corporation, an affiliate and the ultimate parent of Defendants Fox Entertainment Group and MySpace, Inc.; Viacom Inc., of which Defendant MTV Networks is a division of a subsidiary, Viacom International Inc.; The Walt Disney Company, an affiliate and the ultimate parent of Defendants American Broadcasting Companies, Inc., ESPN, Inc., Soapnet, LLC and Walt Disney Internet Group; and Warner Music Inc. (these entities and Defendants together being referred to herein as the "Undertaking Parties"), operate or service a large number of internet websites.

**WHEREAS** Defendants Quantcast Corporation ("Quantcast") and Clearspring Technologies, Inc. ("Clearspring") employ technologies used by the Undertaking Parties and many other companies on their internet websites.

**WHEREAS** Defendants and the Undertaking Parties may use local shared objects that may be stored on computers or other devices in Adobe Flash

1

Media local storage ("LSOs").

**WHEREAS** Plaintiffs contend that Defendants used or deposited LSOs and HTTP "cookies" ("Cookies") on the computers or devices of website visitors without adequate disclosure, used LSOs to regenerate or redeposit Cookies after a user deleted those Cookies; used Cookies, LSOs to obtain or provide information from or about a user contrary to either the user's consent or intent; and tracked users, shared their information or displayed advertising to them without sufficient notice.

**WHEREAS**, on July 23, 2010 and July 30, 2010, the *Valdez, et al. v. Quantcast Corporation, et al.* and *Aguirre v. Quantcast Corporation, et al.* complaints were filed against Quantcast (and other defendants).  Collectively, these complaints alleged violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. 1030; (ii) the Electronic Communications Privacy Act, 18 U.S.C. §2510; (iii) the Video Privacy Protection Act, 18 U.S.C. § 2710; (iv) California's Computer Crime Law, Penal Code § 502; (v) California's Invasion of Privacy Act, California Penal Code § 630; (vi) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (vii) the California Consumer Legal Remedies Act; (viii) Unjust Enrichment; and (ix) California Uniform Trade Secrets Act, California Civil Code § 3426.  On September 21, 2010, the *Valdez, et al. v. Quantcast Corporation, et al.* and *Aguirre v. Quantcast Corporation, et al.* actions were consolidated by order of the court in the Central District of California as *In Re Quantcast Advertising Cookie Litig.*, No. 2:10-cv-05484-GW and in which an amended complaint as to all related matters against Quantcast was filed on _____.

**WHEREAS**, the complaints in *White, et al. v. Clearspring Technologies, Inc., et al.*, *Intzekostas v. Fox Entertainment Group, et al.,* and *Rona v. Clearspring Technologies, Inc.* were filed respectively on August 10, 2010, September 10, 2010, and October 18, 2010 alleging claims against Clearspring (and

other defendants).   Collectively these complaints alleged violations of (i) the Computer Fraud and Abuse Act, 18 U.S.C. 1030; (ii) California's Computer Crime Law, Penal Code § 502; (iii) California's Invasion of Privacy Act, California Penal Code § 630; (iv) the California Consumer Legal Remedies Act, California Civil Code § 1750; (v) the California Unfair Competition Law, Cal. Bus. and Prof. Code § 17200; (vi) Trespass to Personal Property/Chattels; (vii) Unjust Enrichment; and (viii) the Electronic Communications Privacy Act, 18 U.S.C. §2510.   On October 13, 2010, the *White, et al. v. Clearspring Technologies, Inc., et al.* and *Intzekostas v. Fox Entertainment Group, et al.* actions were consolidated by order of the court in the Central District of California as *In Re Clearspring Flash Cookie Litig.*, No. 2:10-cv-05948-GW, and in which an amended complaint as to all related matters against Clearspring was filed on _____.

**WHEREAS**, commencing in October 2010, certain of the Parties conducted a series of settlement negotiations including, among other things, an in-person mediation conducted by the Mediator on October 19, 2010, during which those Parties each represent that they have candidly aired the strengths and weaknesses in their respective litigation positions.

**WHEREAS**, Defendants and their affiliated Undertaking Parties deny any and all wrongdoing whatsoever.

**WHEREAS**, Class Counsel have conducted extensive research and investigation relating to the claims and the underlying events and transactions alleged in the Complaint during the prosecution of the Litigation which included:  (a) the interview of the Representative Plaintiffs and analysis of their computers to assess the potential claims of each individual; (b) the review of public statements, including consumer-facing statements on Defendants' websites, press releases attributed to Defendants, and articles about Defendants; (c) analysis of Defendants' interactions with web browsers; and (d) research of the

3

applicable law with respect to the claims asserted in the Complaint and arguments asserted by Defendants.   Although Class Counsel believe that the claims asserted against Defendants in the Litigation have substantial merit, Class Counsel recognize and acknowledge that continued prosecution of the Litigation through trial and possible appeal would be protracted and expensive.

**WHEREAS**,  Class Counsel and Defendants recognize and acknowledge that continued prosecution of the Litigation through trial and possible appeal would be protracted and expensive, and the outcome uncertain.

**WHEREAS**, each of the Parties and counsel believes, in consideration of all the circumstances and after substantial arms' length settlement negotiations between counsel, that its interests are best served by entering into the settlement set forth in the Settlement Agreement, and that this proposed settlement is fair, reasonable, adequate and in the best interests of the Settlement Class.

**WHEREAS**, the Settlement Agreement defines "Protected Persons" as Defendants and the Undertaking Parties, and each of their respective past and present officers, directors, employees, insurers, agents, representatives, investors, customers, partners, joint-venturers, parents, subsidiaries (defined as any entity in which a Defendant or Undertaking Party owns or controls at least 50% of the voting securities or the right to elect a majority of the members of the board of directors or by contract or otherwise controls such entity), affiliates, attorneys, successors and assigns; as well as all Persons that used, deployed or caused the deployment of, in online interactions with Class Members Clearspring's Launchpad and/or Add This products; and all Persons in connection with whom defendants Quantcast, Clearspring, or an Undertaking Party deposited a Cookie, LSO or similar technology on a Class Member's browser, computer or device.

**WHEREAS**, the Settlement Agreement among the parties defines "Released Claims" as "Any and all claims for payment, non-economic or injunctive

4

1   relief of any kind or nature and any and all liabilities, demands, obligations,
2   losses, actions, causes of action, damages, costs, expenses, attorneys' fees and
3   any and all other claims of any nature whatsoever, based on any of the laws,
4   regulations, statutes or rules cited, evidenced or referenced by such allegations
5   and statements, or any other claims, including but not limited to: all claims,
6   including unknown claims, as set forth in Section 5.3 below, arising from or
7   relating to (i) any of the allegations, facts or statements set out in, or to any
8   claim that was or could have been brought in any of the Complaints; (ii) Defen-
9   dants', the Undertaking Parties' and their subsidiaries' and affiliates' use of
10  LSOs; alleged depositing of Cookies or LSOs on the computers of persons who
11  accessed one or more of Defendants', the Undertaking Parties' or their subsidi-
12  aries' or affiliates' websites or other online content (in the case of the Undertak-
13  ing Parties, their subsidiaries and affiliates, whether such Cookies or LSOs were
14  deposited by or through an Undertaking Party, a subsidiary or affiliate thereof,
15  Quantcast, Clearspring or any other Person); the regeneration or redeposit of
16  Cookies after a user deleted those Cookies; or the alleged obtaining or provision
17  of information from or about a user contrary to either the user's consent or
18  intent; and (iii) claims that Defendants, the Undertaking Parties or their subsidi-
19  aries or affiliates allegedly tracked users, shared their information or displayed
20  advertising to them without sufficient notice. Without limiting the foregoing, for
21  avoidance of doubt, the definition of Released Claims is intended to provide any
22  Protected Person that is an Undertaking Party or a subsidiary or affiliate thereof
23  with a full release from all claims Class Counsel presently is pursuing involving
24  LSOs and similar technologies in other cases, specifically: *Davis v. VideoEgg,*
25  *Inc.*, No. CV 10 7112 (C.D. Cal.); *La Court v. Specific Media, Inc.*, No. 10-CV-
26  1256 JVS (C.D. Cal.); *Aughenbaugh v. Ringleader Digital, Inc.*, No. 10-CV-
27  1407-CJC-RNB (C.D. Cal.); and *Hillman v. Ringleader Digital, Inc.*, No. 10-
28  CV-8315 (S.D.N.Y.); and such other similar case(s) as to which the Parties may

agree in writing from time to time prior to the date approved by the Court for persons to object to or exclude themselves from the Settlement, which agreement shall not be unreasonably withheld by any Party and which writing(s) shall be deemed as amending and incorporated into this section 1.1. Notwithstanding the foregoing, excluded from Released Claims are all claims related to the use or deployment of non-Quantcast and non-Clearspring LSOs by any Person other than the Defendants or the Undertaking Parties."

**WHEREAS**, the Settlement Agreement provides for the release of Released Claims against all Protected Persons.

**WHEREAS**, the Parties have engaged in intensive, complex, difficult and hard-fought arm's-length negotiations; and

**WHEREAS**, as a result of those lengthy negotiations, the Parties have been able to reach an agreement to settle these Actions; and

**WHEREAS**, by the terms of the proposed Settlement of this Action, in exchange for the dismissal of the Action with prejudice, dismissal of all Released Claims with prejudice, and for entry of this Final Order and Judgment, the Defendants and Undertaking Parties shall take all the actions required by the Settlement Agreement, the terms of which are expressly incorporated by reference herein, in accordance with the procedures set forth therein.

**WHEREAS**, on December ___, 2010, this Court entered a Hearing Order (the "Hearing Order"), which, *interalia*:

> **(a)** certified, for settlement purposes only, pursuant to Rule 23(a) and Rules 23(b)(2) and 23(b)(3) of the Federal Rules of Civil Procedure, a class consisting of all persons in the United States who, during the Class Period, used any web browsing program on any device to access one or more internet sites controlled, operated or sponsored by Defendants, Undertaking Parties News Corporation, Viacom Inc. or The Walt Disney Company or subsidiaries of affiliates thereof; or any other internet site employing any of Clearspring's or Quantcast's technologies involving the use of HTTP "cookies" ("Cookies") or local shared objects stored in Adobe Flash Media local storage ("LSOs");

6

**(b)**     appointed Jennifer Aguirre; A.A., a minor, by and through her parent Guardian Ad Litem, Jose Aguirre; Alan Bonebrake; Alejandro Godoy; Byron Griffith; J.H., a minor, by and through his parent, Guardian Ad Litem, Jeff Hall; R.H., a minor by and through her parent Guardian Ad Litem, Jeff Hall; Mary Huebner; Erica Intzekostas; Jose Marquez; Kira Miles; Toni Miles; Terrie J. Moore; Austin Muhs; David Rona; Brittany Sanchez; Edward Valdez; Gerardo Valdez; Kayla Valdez; and Brian White as representatives of the Settlement Class;

**(c)**     appointed KamberLaw, LLC as counsel to the Settlement Class;

**(d)**     preliminarily approved the Settlement, pursuant to Rule 23(e) of the Federal Rules of Civil Procedure;

**(e)**     set a hearing to take place on ____, 2010, at _____ __.m., before this Court, at the at the United States Courthouse for the Central District of California, 312 North Spring Street, Los Angeles, California (the "Fairness Hearing"), upon notice to members of the Settlement Class, to determine whether:

**(*i*)** the requirements for certification of the Settlement Class have been met;

**(*ii*)** the proposed settlement of the Action in accordance with the terms set forth in the Settlement Agreement, including as part of the Settlement the payment of Plaintiffs' Class Counsel's attorneys' fees and reimbursement of Plaintiffs' Class Counsel's expenses, should be approved as fair, reasonable and adequate; and

**(*iii*)** the Judgment approving the Settlement and dismissing the Action on the merits and with prejudice against Plaintiffs and Settlement Class Members should be entered.

**(f)**     approved the forms of the Notice of Pendency and Settlement Class Action (the "Full Settlement Notice"), substantially in the form of Exhibits A.2 and A.3 annexed to the Settlement Agreement;

**(g)**     prescribed the method and period of time for providing notice to members of the Settlement Class of the certification of the Settle-

ment Class; the Settlement; Plaintiffs' counsel's application for an award of attorneys' fees and reimbursement of expenses; and the Fairness Hearing;

(h)     found that such notice to the members of the Settlement Class as described in the Settlement Agreement: (*i*) is the best notice practicable to members of the Settlement Class; (*ii*) is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Action, conditional certification of the Settlement Class, the proposed Settlement, and the rights of members of the Settlement Class to object to the Settlement; to request exclusion from the Settlement Class; and the application of Plaintiffs' counsel for an award of attorneys' fees and reimbursement of expenses; (*iii*) is reasonable and constitutes due, adequate and sufficient notice to all persons and entities entitled to receive notice; and (*iv*) meets all applicable requirements of law including, but not limited to, Rule 23(c) of the Federal Rules of Civil Procedure and the Due Process Clause of the Fourteenth Amendment of the United States Constitution;

(i)     directed Plaintiffs' Class Counsel and Defendants' counsel, on or before _____ __,2010**,** to file with the Court evidence that the notice-related provisions the Hearing Order had been satisfied, which they did;

(j)     prescribed the method and period of time during which members of the Settlement Class may file requests to be excluded from the Settlement Class;

(k)     provided that, whether or not the Effective Date occurs, any member of the Settlement Class who does not properly and timely request exclusion from the Settlement Class shall be bound by any and all judgments and settlements entered or approved by this Court, whether favorable or unfavorable to the Settlement Class;

(l)     prescribed the method and periods of time during which members of the Settlement Class may serve written objections to the Settlement and/or the application for an award of attorneys' fees and/or reimbursement of expenses by Plaintiffs' Counsel;

(m)     preliminarily barred and enjoined Plaintiffs and all members of the Settlement Class and any other person, representative, or entity act-

8

ing on behalf of any members of the Settlement Class from filing, commencing, prosecuting, maintaining, or intervening in any claim, lawsuit, arbitration, administrative, regulatory or other proceeding (as members of a class action or otherwise) arising out of the Released Claims against any of the Released Parties;

**(n)**     provided that if for any reason, the Effective Date of the Settlement does not occur, the Hearing Order shall become null and void, and shall be without prejudice to the rights of the parties, all of whom shall be restored to their respective positions as of December 8, 2010, except that any extensions of time granted since that date by one Party to the other shall continue to have force and effect, and neither Party shall seek an order of default against any other Party for actions not taken while approval of the Settlement was pending, and the Settlement and Settlement Agreement shall become null and void and be of no further force and effect, and neither the Settlement Agreement nor the Court's orders issued in connection with consideration of the Settlement, including this Order, shall be used or referred to in any litigation for any purpose whatsoever, except as required to enforce those provisions of the Settlement Agreement which survive a failure of the Settlement to be consummated or the Effective Date of the Settlement to occur.

**(o)**     provided that nothing in the Hearing Order shall be construed or used as an admission, concession, or declaration by or against any Defendant or Undertaking Party for any fault, wrongdoing, breach or liability; or be construed or used as an admission, concession, or declaration by or against Plaintiffs or the members of the Settlement Class that their claims lack merit or that the relief requested in the operative Complaint in this Action is inappropriate, improper, or unavailable, or as a waiver by any party of any defenses or claims he, she, or it may have; or be construed as a finding or conclusion of the Court with respect to the merit or lack of merit of any claim asserted in the Action or the defense to any claim asserted in the Actions; and

**WHEREAS**, Defendants have submitted evidence demonstrating, and the Court finds, that Defendants have provided the notices to the United States Department of Justice and to the Attorneys General of the 50 States, as required by the Class Action Fairness Act of 2005, Pub. L. 109-2 (2005), and specified in 28 U.S.C. § 1715; and

9

1    **WHEREAS**, the Fairness Hearing was duly held as noticed on _____

2    __, 2010; and

3    **WHEREAS**, this Court, having heard from Plaintiffs' Class Counsel on

4    behalf of the Settlement Class, and from Defendants' counsel, and having re-

5    viewed all other arguments and submissions presented by all interested persons

6    and entities with respect to the Settlement and the application of Plaintiffs'

7    counsel for an award of attorneys' fees and reimbursement of expenses; and

8    **WHEREAS**, all capitalized terms used herein have the meanings set forth

9    and defined in the Settlement Agreement, it is hereby

10   **ORDERED, ADJUDGED AND DECREED THAT:**

11   **1.**    Notice to the members of the Settlement Class required by Rule

12   23(c) and (e) of the Federal Rules of Civil Procedure has been provided as

13   directed by this Court in the Hearing Order, and such notice having constituted

14   the best notice practicable, including, but not limited to, the forms of notice and

15   methods of identifying and providing notice to the members of the Settlement

16   Class, and satisfied the requirements of the Federal Rules of Civil Procedure, the

17   Constitution of the United States, and all other applicable laws.

18   **2.**    The Settlement Class as provided in the Hearing Order is uncondi-

19   tionally certified pursuant to Rules 23(a) and Rules 23(b)(2) and 23(b)(3) of the

20   Federal Rules of Civil Procedure.

21   **3.**    For purposes of all aspects of the Settlement Agreement except the

22   provisions of Section IV.G, with respect to which the Settlement Class will be

23   certified pursuant to Federal Rule of Civil Procedure 23(b)(2), the prerequisites

24   for a class action under Rules 23(a) and (b)(3) of the Federal Rules of Civil

25   Procedure have been satisfied in that: (a) the number members of the Settlement

26   Class is so numerous that joinder of all members thereof is impracticable; (b)

27   there are questions of law and fact common to the Settlement Class; (c) the

28   claims of Plaintiffs are typical of the claims of the Settlement Class they seek to

10

represent; (d) Plaintiffs have and will fairly and adequately represent the interests of the Settlement Class; (e) the questions of law and fact common to the members of the Settlement Class predominate over any questions affecting only individual members of the Settlement Class; and (f) a class action is superior to all other available methods for the fair and efficient adjudication of this controversy.

4.      For purposes of the injunctive relief specified in Section IV.G of the Settlement, the prerequisites for a class action under Rules 23(a) and (b)(2) of the Federal Rules of Civil Procedure have been satisfied in that: (a) the number members of the Settlement Class is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the Settlement Class; (c) the claims of Plaintiffs are typical of the claims of the Settlement Class they seek to represent; (d) Plaintiffs have and will fairly and adequately represent the interests of the Settlement Class; and (e) the Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory relief with respect to the class as a whole.

5.      The Settlement, as set forth in the Settlement Agreement, is in all respects fair, reasonable, and adequate, and in the best interests of the Settlement Class Members, and is approved in all respects in accordance with Rule 23 of Federal Rules of Civil Procedure.

6.      Plaintiffs,Defendants, and Undertaking Parties are directed to promptly consummate the Settlement in accordance with the Settlement Agreement and all of its terms.

7.      The Settlement shall not be deemed to constitute an admission or finding of liability or wrongdoing on the part of Defendants, or any of the Plaintiffs, Settlement Class Members, or Released Parties.

8.      Those persons appearing on the list annexed hereto as Exhibit A

11

have properly and timely requested exclusion from the Settlement Class, pursuant to the terms of this Court's Hearing Order, and are excluded from the Settlement Class, shall not be bound by this Final Order and Judgment (except with respect to the injunctive relief specified in Section IV.G of the Settlement Agreement), nor receive any benefit thereunder.

9.     The Action is hereby dismissed, with prejudice, on the merits, as against all Plaintiffs and all members of the Settlement Class, on the terms and conditions set forth in the Settlement Agreement, and without costs to any party except as provided herein, in the Hearing Order and in the Settlement Agreement.

10.     Upon the Effective Date, each Plaintiff and each Settlement Class Member shall be deemed to have, and by operation of this Final Order and Judgment shall have, fully, finally, and forever released, relinquished and discharged all Released Claims against the Protected Persons, in the manner(s) set forth in the Settlement Agreement.

11.     Upon the Effective Date, each Plaintiff and each Settlement Class Member shall be permanently barred and enjoined from asserting, commencing, prosecuting or continuing any of the Released Claims.

12.     An incentive payment, not to exceed $**[insert]**, is hereby awarded to each of the following named plaintiffs in the Actions: Jennifer Aguirre; A.A., a minor, by and through her parent Guardian Ad Litem, Jose Aguirre; Alan Bonebrake; Alejandro Godoy; Byron Griffith; J.H., a minor, by and through his parent, Guardian Ad Litem, Jeff Hall; R.H., a minor by and through her parent Guardian Ad Litem, Jeff Hall; Mary Huebner; Erica Intzekostas; Jose Marquez; Kira Miles; Toni Miles; Terrie J. Moore; Austin Muhs; David Rona; Brittany Sanchez; Edward Valdez; Gerardo Valdez; Kayla Valdez; and Brian White. Defendants shall pay **[amount]** to each of the specified individuals within ten (10) business days after the Effective Date.

12

**13.**     Plaintiffs' counsel are hereby awarded (*i*) attorneys' fees in an amount not to exceed **[sum to be specified]**, and (*ii*) reimbursement of their reasonable documented expenses incurred up to and through the date of the Fairness Hearing in an amount not to exceed **[sum to be specified]**.   Such amounts are to be paid to Plaintiffs' Class Counsel by Defendants within ten (10) business days after the Effective Date, and in accordance with Paragraphs 4.13 and 4.15 of the Settlement Agreement.

**14.**     The award of attorneys' fees to Plaintiffs' counsel, as provided in paragraph 16, above, shall be allocated among Plaintiffs' counsel in a fashion that, in the opinion of Plaintiffs' Class Counsel, fairly compensates Plaintiffs' counsel for their respective contributions in the prosecution of the Action.   In making its award of attorneys' fees and reimbursement of expenses, in the amounts described in paragraph 15, above, the Court has considered and finds as follows:

       **a.**     The Settlement has provided significant relief to the Settlement Class.

       **b.**     Defendants' adoption of changes to their business practices and procedures involving the use and appropriate disclosure of LSOs were a negotiated material term of Settlement.

       **c.**     The Settlement Notice was published to at least _____ putative Settlement Class members.   Only _____ [No] objections were filed against the terms of the proposed Settlement.

       **d.**     Plaintiffs' counsel have conducted the litigation and achieved the Settlement with skill, perseverance, and diligent advocacy on behalf of Plaintiffs and the Settlement Class as a whole.

       **e.**     The Action involves complex factual and legal issues and, in the absence of Settlement, would involve further lengthy proceedings and uncertain resolution of such issues.

1        **f.**    Had Settlement not been achieved, there would remain a sig-

2    nificant risk that the Settlement Class may have recovered less or nothing from

3    Defendants, and that any recovery would have been significantly delayed which

4    would have resulted in the continued exposure of Settlement Class members'

5    computers to security vulnerabilities.

6        **g.**    The amount of attorneys' fees and reimbursable expenses

7    awarded to Plaintiffs' counsel is fair and reasonable, given the number of attor-

8    ney hours expended to achieve the Settlement on behalf of Plaintiffs and the

9    Settlement Class as a whole, and the estimated value of the settlement benefits

10   obtained for the Settlement Class, and the amount awarded is consistent with

11   awards for similar work in similar cases.

12       **15.**    Defendants, the Undertaking Parties and the Protected Persons shall

13   not be liable for any additional fees or expenses for Plaintiffs' Class Counsel or

14   counsel of any Plaintiff or Settlement Class Member in connection with the

15   Actions, beyond those expressly provided in the Settlement Agreement.

16       **16.**    By reason of the Settlement, and approval hereof, there is no just

17   reason for delay and this Final Order and Judgment shall be deemed a final

18   judgment pursuant to Rule 54(b) of the Federal Rules of Civil Procedure.

19       **17.**    Jurisdiction is reserved, without affecting the finality of this Final

20   Order and Judgment, over:

21       **(a)**    Effectuating the Settlement and the terms of the Settlement

22   Agreement, including the payment of Plaintiffs' counsel's attorneys' fees

23   and reimbursement of expenses, including any interest accrued thereon;

24       **(b)**    Supervising all aspects of the administration of the Settle-

25   ment;

26       **(c)**    Determining whether, in the event an appeal is taken from

27   any aspect of this Final Order and Judgment, notice should be given at the

28   appellant's expense to some or all Settlement Class Members apprising

them of the pendency of the appeal and such other matters as the Court may order;

   **(d)**   Enforcing and administering the Settlement Agreement and the Settlement including any releases executed in connection therewith, and the provisions of this Final Order and Judgment;

   **(e)**   Adjudicating any disputes that arise under the Settlement Agreement; and

   **(f)**   Any other matters related or ancillary to the foregoing.

Dated: December __, 2010      **SO ORDERED, ADJUDGED AND DECREED**

_____
George H. Wu
Judge Of The United States District Court

15