Scott A. Kamber
skamber@kamberlaw.com
David A. Stampley
dstampley@kamberlaw.com
KamberLaw, LLC
100 Wall Street, 23rd Floor
New York, NY. 10004
Telephone: (212) 920-3072
Facsimile: (920-3081

CLASS COUNSEL

(Additional attorneys listed on signature page)

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re QUANTCAST ADVERTISING COOKIE LITIGATION, and<br><br>In Re CLEARSPRING FLASH COOKIE LITIGATION | No. 2:10-cv-05484-GW-JCG<br><br>No. 2:10-cv-05948-GW-JCG<br><br>[Assigned to the Hon. George H. Wu]<br><br>**DECLARATION OF DAVID A. STAMPLEY IN SUPPORT OF PLAINTIFFS' MOTION FOR (1) FINAL APPROVAL OF CLASS ACTION SETTLEMENT; AND (2) APPROVAL OF ATTORNEYS FEES AND COSTS AND INCENTIVE AWARDS**<br><br>Date:    June 13, 2011<br>Time:    9:30 a.m.<br>Location: Courtroom 10<br>         312 N. Spring Street<br>         Los Angeles, California 90012 |

I, David A. Stampley, declare as follows:

1. I am an attorney-at-law duly licensed to practice before all of the courts of the State of New York and am admitted *pro hac vice* before this court. I am a managing member of KamberLaw, LLC ("KamberLaw"). I am the attorney primarily responsible for the handling of this litigation on behalf of KamberLaw LLC. I make this declaration based upon my own personal knowledge. If called to testify, I could and would testify to the facts contained herein.

2. I represent that the disclosures contained herein relating to mediation and negotiation between the parties are with the consent of Michael Rhodes of Cooley LLP, Michael Page of Durie Tangri LLP, Jeffrey Jacobson of Debevoise & Plimpton LLP and Ian Ballon of Greenberg Traurig LLP and are not violative of any settlement or mediation privilege.

3. For over nine months prior to the filing of the complaint in this matter, I and my co-counsel worked closely with co-counsel Joseph H. Malley and certain class representatives, investigating facts and developing legal theories contained in the complaint. This pre-complaint effort occupied hundreds of hours of attorney and client time as well as consultations with certain nonlegal experts. This case impacted millions of class members, and dealt with highly technical processes by which information obtained by tracking class members on the web was shared among website owners and their online service providers. These processes required significant business and legal research and technical expert investigation to understand the mechanisms by which Defendants acquired, correlated, and shared class members' information and the mechanisms and policies by which Defendants provided or could have provided, disclosures of their practices to affected members. I believe this understanding allowed us to plead this case with the detail and accuracy that motivated rather early settlement negotiations between the parties. Based on my experience, I believe that the promptness of relief is an absolutely critical feature in addressing resolution of Internet usage issues that involve injunctive relief.

4. Beginning on July 23, 2010, the plaintiffs in these matters began filing complaints on their own behalf and on behalf of a purported class of all persons who used any browsing program on any device to access one or more Internet sites controlled, operated or sponsored by Defendants employing Clearspring or Quantcast's technologies involving the use of HTTP "cookies" or local shared objects stored in Adobe Flash Media local storage ("LSOs" or "Flash cookies"). Plaintiffs alleged that the Defendants failed to provide them proper and adequate notice regarding transmissions of information about them, failed to obtain their consent for such transmissions, and engaged in actions that violated the Electronic Communications Privacy Act ("ECPA"), the Video Privacy Protection Act ("VPPA"), the Computer Fraud and Abuse Act ("CFAA"), the California Consumer Legal Remedies Act ("CLRA"), and the California Computer Crime Law ("CCCL"), California's Invasion of Privacy Act, the California Unfair Competition Law, the California Uniform Trade Secrets Act, and Unjust Enrichment.

5. At all times, all Defendants have denied and continue to deny that they have engaged in any wrongdoing or committed, threatened to commit, or attempted to commit any wrongdoing of any kind, including that alleged in the Complaint in this matter. Defendants contend that they have acted properly and therefore deny that the plaintiffs and putative class are entitled to any form of damages based on the conduct alleged in the Complaint. Defendants have maintained and continue to maintain that they have meritorious defenses to all claims alleged in the Complaint and that Defendants were and are prepared to vigorously defend against all claims asserted in this litigation.

6. Beginning in October 2010, representatives of Plaintiffs and Defendants initiated a series of settlement discussions, agreeing to private and confidential mediation of the matter and engaged in substantive, arms-length negotiations.

7. The settlement of this litigation was negotiated with the assistance and oversight of Rodney A. Max of Upchurch Watson White & Max Mediation Group,

who presided over a full day mediation session, after which the parties continued settlement discussions. The parties did not discuss the amounts of any incentive fee or payment to Plaintiffs' counsel until after the terms of the settlement agreement were agreed upon. After the full day of mediation, the parties to the mediation agreed on all substantive relief, and memorialized their mutual understanding in a document outlining the principal terms of settlement.

8. In the following weeks, Mr. Kamber and I personally negotiated with Mr. Rhodes of Cooley and Mr. Page of Durie Tangri to flesh out the settlement framework and implementation. The parties continued to negotiate, exchange information regarding settlement details, and examine creative approaches to potential injunctive relief compatible with Defendants' business models.

9. The settlement is product of hard-fought litigation and takes into consideration the significant risks specific to the case. It was negotiated by experienced counsel for plaintiffs and defendants with a solid understanding of both the strengths and weaknesses of their respective positions.

10. I have participated directly in the mediation and negotiation efforts, the petition for preliminary approval of the proposed settlement, and the petition for final approval now before this Court. Throughout our mediation and negotiation efforts and in advising our clients of the proposed settlement, plaintiffs' counsel has at all times considered the fairness, reasonableness, and adequacy of the settlement for the class, taking into account: the strength of plaintiffs' case; the risk, expense, complexity and likely duration of any further litigation; the risk of certifying a class and then maintaining class action status through trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings and views of plaintiffs' counsel. Against the backdrop of counsel's collective experience in prosecuting complex class actions, co-counsel and I have considered the claims set forth in the complaint and our continued confidence in the merit of those claims, the scope of relief offered in the settlement compared to potential relief at the conclusion of litiga-

tion, and the risks and costs of continued litigation. Taking these factors into account, it is my opinion that the proposed settlement is fair, reasonable, and adequate, well within the range of possible approval, and therefore deserving of the Court's final approval.

11. These issues and others were considered by plaintiffs and their counsel in deciding to settle the litigation on terms which would provide the class with a benefit of $2.4 million and injunctive relief that directly redresses the harm alleged in the complaint. In reaching the determination to settle, plaintiffs and lead counsel have weighed the documentary evidence and legal authority supporting their allegations against the documents and legal authority that defendants assert undercut plaintiffs' claims, as well as defendants' characterizations and interpretations of the evidence in this case. Plaintiffs also considered the novelty of the harm and liability issues in this case.

12. On balance, considering all the circumstances and risks both sides faced, plaintiffs came to the conclusion that settlement on the terms agreed upon was in the best interests of the class. The settlement confers substantial benefit on the class and eliminates the significant costs of continued discovery, the risk that certification would be denied, and the risk that summary judgment and/or trial would not be in plaintiffs' favor. It is respectfully submitted that the settlement should be approved as fair, reasonable and adequate, that Plaintiffs' counsel should be awarded fees of $600,000, or 25 percent of the settlement's value, which includes counsels' expenses of $10,318.82.

13. Plaintiffs' counsel prosecuted this action on a wholly contingent basis and advanced and incurred litigation expenses. By doing so, Plaintiffs' counsel have borne the risk of an unfavorable result. They have not received any compensation for their substantial effort nor have they been paid for their expenses. The vigorous nature of the litigation has resulted in expenses of $10,318.82 as well as the investment of 1,171 hours of attorney and other professional time (these numbers reflect Interim

Plaintiffs' counsel's fees and expenses as well as those reported to them by the other attorneys in this litigation, who submitted declarations in support of their fees and expenses).

14.  The fee and costs application in the amount of $600,000, or 25 percent of the settlement value, is fair both to the settlement class and Plaintiffs' counsel and warrants this Court's approval. This fee request is within the range of fees frequently awarded in these types of actions and is entirely justified in light of the substantial benefits conferred on the class, the risks undertaken, the quality of representation, and the nature and extent of legal services performed..

15.  The following is a summary of the nature of the settlement class's claims, the principal events that occurred during the course of this litigation, and the legal services provided by Co-Lead Counsel.

**LEAD COUNSELS' FEE APPLICATION IS REASONABLE**

**A.    Lead Counsels' Fee Application is Fair and Reasonable**

16.  The requested fee based upon a lodestar of $544,887 and a multiplier of just above one, which lies well within, and on the low side of, the range of attorney fee awards, is fair and reasonable and is amply justified by numerous specific facts and circumstances in this case.

*1.    Nature and Extent of Litigation*

17.  The prosecution of this action required Plaintiffs' counsel to perform 1,171 hours of work yielding a lodestar of $544,887 and incur $10,319 in expenses.

18.  These cases settled only after extensive negotiations and a full day mediation session with mediator Rodney A. Max.

*2.    The Requested Fee and Cost Award are Reasonable*

19.  Plaintiffs' counsel requests a fee and cost award that is equal to 25 percent of the settlement fund. As set forth in the accompanying memorandum in support of plaintiffs' application for an award of attorneys' fees and costs, numerous courts have awarded fees consistent with plaintiffs' lodestar and multiplier of only

1.01. By any method of computation, whether it be a lodestar analysis or percentage-based analysis, the requested fees are reasonable and merited in this case in light of the effort required and the results obtained.

20. The parties have agreed that a fee not exceeding 25 percent, including costs and expenses, is reasonable and warranted in this case. Plaintiffs' counsel seeks a total fee and cost award of $600,000. This represents a multiplier on counsels' time of just over one.  Applying a multiplier of just over1 is a modest multiplier that is reasonable and warranted here.

### 3.   *Time Expended*

21. Together, Plaintiffs' counsel expended a total of 1,171 hours in attorney time in litigating and obtaining the settlement. The resulting lodestar is $544,877. To calculate Plaintiffs' counsel's lodestar the attorneys performing work on this litigation are billed at rates that correlate to their respective experience and that are reasonable in the New York, California, and Texas legal markets. The rates employed by Plaintiffs' counsel are their normal billing rates that would be presently charged to hourly clients.

22. Additionally, although several lawyers were involved in the litigation of this matter, each made conscious effort to minimize the duplication of work. Further, the hours submitted were reviewed and any unnecessary hours or duplicative hours have been adjusted.

23. Plaintiffs' counsel anticipates an additional outlay in time and expenses to be incurred through finalizing the administration of the settlement, which is <u>not</u> included in the base lodestar.

### 4.   *Support of the Class Representatives*

24. Plaintiffs actively monitored the litigation and consulted with counsel during the course of settlement negotiations. The named class representatives spent considerable time and effort fulfilling their duties and responsibilities in this case, including reviewing briefs, and consulting with counsel concerning the merits of the

litigation, and support Plaintiffs' counsel's requested fee.

### 5. *Excellent Settlement Achieved*

25. The $2.4 million settlement benefit was achieved as a result of extensive and creative prosecutorial and investigative efforts, and contentious and complicated motion practice and settlement negotiations, as detailed herein. Moreover, the injunctive relief terminates the offending conduct complained of.

### 6. *Risk of Contingent Class Action Litigation*

26. This declaration and the motion in support of the proposed settlement and the fee application describe the substantial risks of this litigation. Those same difficulties also constituted risks that counsel might never be paid for their efforts.

27. There are numerous cases where Plaintiffs' counsel in contingent fee cases such as this, after expenditures of significant hours and out-of-pocket expenditures, have received no compensation whatsoever. Plaintiffs' counsel who litigate cases in good faith and receive no fees whatsoever are often the most diligent members of the plaintiffs' bar. The fact that defendants and their counsel know that the members of the plaintiffs' bar are actually able to, and will, got to great lengths even in high-risk cases gives rise to meaningful settlements in actions such as this. The losses suffered by Plaintiffs' counsel in other actions were insubstantial settlement offers are rejected, and Plaintiffs' counsel ultimately receives little or no fee, should not be ignored. Plaintiffs' counsel knows from personal experience that despite the most vigorous and competent efforts, attorneys' success in contingent litigation, such as this, is never assured.

28. Because the fee to be awarded in this matter is entirely contingent, the only certainty from the outset was that there would be no fee without a successful result, and that such a result would be realized only after a lengthy and difficult effort.

29. Plaintiffs' success in this action was by no means assured. Defendants disputed nearly everything and challenged plaintiffs at every step. Were this settle-

ment not achieved, and even if plaintiffs prevailed at trial, plaintiffs faced potentially years of costly and risky appellate litigation against defendants, which ultimate success far from certain. Plaintiffs' counsel is entitled to a fee and cost award of $600,000 or 25 percent of the settlement value because of the risk factors involved in this case.

### 7. Diligent Prosecution of this Case

30. The requested fee is also warranted in light of the extensive efforts on the part of Plaintiffs' counsel, as outlined above, that were required to produce this settlement. Plaintiffs' counsel spent 1,171 hours of their time on the case, *inter alia*, conducting an extensive investigation, reviewing and analyzing documents, consulting with experts, drafting complaints and additional legal memoranda, making court appearances and engaging in extensive settlement discussions.

### 8. Complexity of this Action's Factual and Legal Questions

31. Courts have recognized that the novelty and difficulty of the issues in a case are significant factors to be considered in making a fee award. As discussed in the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of the Settlement, this case involved difficult and novel issues of fact and law.

### 9. Contingent Nature of the Case and Financial Burden Carried by Lead Counsel

32. A determination of a fair fee must include consideration of the contingent nature of the fee, the financial burden carried by plaintiffs' counsel and the difficulties that were overcome in obtaining the settlement. Plaintiffs' counsel typically charge at least 33.33 percent for individual contingency fee cases and, having consulted with co-counsel, co-counsel concur that their contingency fee charges in individual cases are typically, at a minimum, 33.33 percent, as well.

33. This action was prosecuted by Plaintiffs' counsel on a "at-risk" contingent fee basis. Plaintiffs' counsel committed 1,171 hours of attorney time and incurred $10,318 in expenses in the prosecution of the litigation, and fully assumed the

risk of an unsuccessful result. Thus, counsel should be fairly compensated for their efforts. Plaintiffs' counsel have received no compensation for their services during the course of this litigation and have incurred very significant expenses in litigating for the benefit of the class. Any fee award or expense reimbursement to Plaintiffs' counsel has always been at risk and completely contingent on the result achieved.

34. Plaintiffs' counsel's efforts were performed on a wholly contingent basis, despite significant risk and in the face of a determined opposition. Under these circumstances, it necessarily follows that we are justly entitled to the award of a reasonable fee and cost award of $600,000.00.

## II. CONCLUSION

35. For all of the foregoing reasons, Plaintiffs' counsel respectfully request that this Court approve the settlement and approve the fee and expense application and award Plaintiffs' counsel $600,000, which incorporates costs to our firms.

36. I declare under penalty perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 19, 2011 at New York, New York.

Dated: April 19, 2011            KAMBERLAW, LLC

By: s/David A. Stampley
_____
David A. Stampley
One of the Attorneys for Plaintiffs, individually and on behalf of a Class of similarly situated individuals