UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION

IN RE QUANTCAST
ADVERTISING COOKIE LITIG.

IN RE CLEARSPRING
FLASH COOKIE LITIG.

) Case No. 2:10-cv-05484-GW
)
)
)
) Case No. No. 2:10-cv-05948-GW
)
) **SUPPLEMENTAL DECLARATION OF**
) **JONI BROWN**
) **RE: OBJECTION AND EXCLUSION**
) **PROCESSING**
)
)
) Date: May 31, 2011
) Honorable: George H. Wu

I, **JONI BROWN**, declare:

    1.    I am a Senior Consultant at Kurtzman Carson Consultants LLC ("KCC"), located at 75 Rowland Way, Suite 250, Novato, California. I am over 21 years of age and am not a party to this action. I have personal knowledge of the facts set forth herein and, if called as a witness, could and would testify competently thereto. This declaration supplements the declaration was executed by Jeannine Andreis on April 20, 2011.

    2.    The purpose of this declaration is to provide the Parties and the Court with confirmation that the processing or Objections and Exclusions filed by class members specified in the Hearing Order has been fulfilled.

    3.    KCC was retained to, among other tasks; provide notice to the class in the above-captioned matter. These duties included: (1) establishing a settlement website where visitors could

access the  Notice of Pendency of Class Actions and Proposed Settlement,  (the "Notice"), and other materials; (2) distributing the Published Notice to the class in 4 newspapers in California; (3) releasing a Press Release and (4) managing an internet media campaign.

4.      As of the date of this declaration, Kurtzman Carson Consultants has received 1 Request for Exclusion from all three cases; Quantcast Advertising Cookie Litigation, Clearspring Flash Cookie Litigation, and Davis v. Video Egg, Inc.  A report listing the request to be excluded and copies of the exclusion requests for each case are attached hereto as Exhibit A.

5.      As of the date of this declaration, Kurtzman Carson Consultants has received 1 Objection to all cases in the Settlement.  A report listing this objector and a copy of the objection is attached hereto as Exhibit B.


I declare under penalty of perjury pursuant to the laws of the State of California that the foregoing is true and correct to the best of my knowledge and that this declaration was executed this 31st day of May, 2011 at Novato, California.



                                          _Joni Brown_____
                                          Joni Brown

# EXHIBIT A

Kurtzman Carson Consultants LLC
Flash Cookie Settlement
Timely Exclusions (Opt Outs) Received
 5/19/2011

| Control # | First Name | Last Name | Quantcast Opt Out | Clearspring Opt Out | VideoEgg Opt Out |
|-----------|------------|-----------|-------------------|---------------------|------------------|
| 900009701 | Nathan | Searles | Y | Y | Y |

May 6, 2011

Flash Cookie Settlement Claims Administrator
c/o Rosenthal & Company LLC
P.O. Box 6177
Novato, CA 94948-6177

*In Re Quantcast Advertising Cookie Litigation*, Case No. 2:10-cv-05484-GW-JCG

I wish to exclude (opt out) of the proposed class action settlement.

Nathan Searles
2871 Main Way Dr.
Rossmoor, CA 90720

May 6, 2011


Flash Cookie Settlement Claims Administrator
c/o Rosenthal & Company LLC
P.O. Box 6177
Novato, CA 94948-6177



*In Re Clearspring Flash Cookie Litigation*, Case No. 2:10-cv-05948-GW-JCG



I wish to exclude (opt out) of the proposed class action settlement.

Nathan Searles
2871 Main Way Dr.
Rossmoor, CA 90720

May 6, 2011

Flash Cookie Settlement Claims Administrator
c/o Rosenthal & Company LLC
P.O. Box 6177
Novato, CA 94948-6177

*Davis, et al. v. VideoEgg, Inc.*, Case No. 2:10-cv-07112-GW-JCG

I wish to exclude (opt out) of the proposed class action settlement.

Nathan Searles
2871 Main Way Dr.
Rossmoor, CA 90720

$ 000.440
02 1P   C0G26241556  MAY 06 2011
MAILED FROM ZIP CODE 90245

Flash Cookie Settlement Claims Administrator
c/o Rosenthal & Company LLC
P.O. Box 6177
Novato, CA 94948-6177

RECEIVED
MAY 0 9 2011
KCC

94948E6177 BS00

Searles
2871 Main Way Dr
Los Alamitos, CA 90720

# EXHIBIT B

Kurtzman Carson Consultants LLC
Flash Cookie Settlement
Timely Objections Received
 5/19/2011

| Control # | First Name | Last Name | Quantcast Objection | Clearspring Objection | VideoEgg Objection |
|---|---|---|---|---|---|
| 900010901 | Sam P | Cannata | Y | Y | Y |

Sam P. Cannata, Pro Se Objector
9555 Vista Way, Suite 200
Cleveland, Ohio 44125
(216) 438-5091 – phone
(216) 587-0900 – fax
*samcannata@cannataphillipslaw.com*

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| In Re Quantcast Advertising Cookie Litigation, | Case No.: 2:10-cv-05484-GW-JCG |
| In Re Clearspring Flash Cookie Litigation | Case No.: 2:10-cv-05948-GW-JCG |
| Davis, et al. v. VideoEgg, Inc. | Case No.: 2:10-cv-07112-GW-JCG |
| | **OBJECTION TO CLASS ACTION SETTLEMENT** |

TO ALL PARTIES AND TO THEIR COUNSEL OF RECORD

Please take notice that class member Sam P. Cannata ("Cannata") intends not to appear by and through counsel at the fairness hearing scheduled for June 13, 2011 at 9:30 a.m. as to Quantcast and Clearspring Settlements; and for July 18, 2011 at 9:30 a.m. as to VideoEgg Settlement and will rely on his written objections.

## MEMORANDUM OF POINTS AND AUTHORITIES

Cannata hereby objects to the proposed class action settlement (the "Settlement") in the above-captioned matter between the plaintiffs (the "Plaintiffs") and Quantcast, Clearspring and VideoEgg ("Defendants") (the "Settlement Agreement") on behalf of a class (the "Class") that includes users of "any web browsing program on any device to access any website employing any of Defendant's technologies involving the use of HTTP (Browser) cookies or Adobe Flash LSOs" in the United States or its territories at any time between June 1, 2008 and March 3, 2011 (the "Class Members").

## I.   STATEMENT OF ISSUES TO BE DECIDED

Cannata identifies the following issues to be decided:

- Whether the Court should review the Settlement Agreement with heightened scrutiny?

- Whether the Settlement Agreement's failure to name the recipients of the *cy pres* fund renders it unfair, inadequate, and unreasonable?

- Whether the Settlement Agreement's failure to obligate Defendants to any permanent, specific improvements or public education as to privacy issues and failure to afford Class Members the right for Plaintiffs to approve any such improvements or public education, results in no benefit to the Class Members and renders the Settlement Agreement unfair, inadequate, and unreasonable?

- Whether the Settlement Agreement's requirement that Class Members release and dismiss their claims upon entry of the Settlement Agreement's Approval Order, prior to the Defendants being obligated to perform any remedy (which occurs only after the Approval Order becomes final and non-appealable), renders the Settlement Agreement unfair, inadequate, and unreasonable?

- Whether the Class definition, which includes a Class period from June 1, 2008 through March 3, 2010, renders the Settlement Agreement unfair, inadequate and unreasonable because the definition is overly broad?

- Whether the Settlement is fair, adequate, and reasonable where the Class members release their claims in exchange for no benefit to the Class?

## II.   FACTUAL AND PROCEDURAL BACKGROUND

This settlement affords class members no compensation. Rather, under the terms of the Settlement Agreements, Defendants will establish an $3.225 million settlement fund (the "Fund") which, after deducting attorneys' fees and class representative fees, is to be used to fund as-yet unnamed organizations to fund research and education projects and activities to promote consumer awareness and choice regarding the privacy, safety and security of electronic information from and about consumers (the "Fund Recipients"). In exchange for nothing, the Settlement Agreement requires Class Members to release, and Class Counsel to dismiss, any and all claims arising out of the privacy breach the Defendants committed via their actions.

The Negotiating Parties executed the Settlement Agreements and Class Counsel filed the Preliminary Approval Motion together with the executed Settlement Agreements. At the time the Settlement Agreements were filed, no dispositive motions had been filed, nor had Class Counsel moved for class certification. The Negotiating Parties had not engaged in any formal discovery, although some undisclosed "confirmatory discovery" is alleged to have been taken while the settlement terms had already been reached. At no time before the settlement was reached, did the Negotiating Parties exchange written discovery, conduct depositions, or brief the legal issues that are central to the claims in this case.

Cannata submits this objection for the Court's consideration. Cannata objects to several aspects of the settlement in this case: (i) the failure of the Settlement Agreement to name the Fund Recipients, (ii) the failure to require specific Education privacy improvements from Defendants which are overseen by an independent third party and approved by Plaintiffs in exchange for the Class Members' releases, (iii) the requirement that Class Members release their claims upon entry of the Settlement Agreement Approval Order before Defendants are required

to provide any benefit (which only occurs upon such Approval Order becoming final and non-appealable), (iv) the over-inclusive Class definition which includes a dubious Class period, and (v) a Settlement Agreement that provides no benefit to the Class in exchange for the release of their claims. For the reasons described herein, Cannata urges the Court to withhold final approval of the Settlement Agreement and to direct the Negotiating Parties to modify the Settlement Agreement as proposed below.

### III. STANDARD OF REVIEW FOR CLASS ACTION SETTLEMENTS

In deciding whether to approve a class action settlement, a court must determine whether the settlement is "fundamentally fair, adequate, and reasonable." [1] A district court must take this determination to ensure proffered settlements are "not the product of fraud or overreaching by, or collusion between, the negotiating parties."[2]

District courts consider the following factors, among others, when presented with a class action settlement.

> The strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the Settlement Agreement.[3]

"The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claim(s) advanced, the type(s) of relief sought, and the unique facts and circumstances presented by each individual case."[4] Applying the factors outlined above, it is clear that the settlement in this case is neither "fundamentally fair," "adequate," nor "reasonable."

---

[1] *Officers for Justice v. Civil Service Com'n of City and* County *of San Francisco*, 688 F. 2d 615, 628 (9th Cir. 1982). *See also* Fed. R. Civ. P. 23(e)(2).
[2] *Id.* at 625.
[3] *Id.* at 628.
[4] *Id.*

## IV.   THE COURT SHOULD REVIEW THE SETTLEMENT AGREEMENT WITH HEIGHTENED SCRUTINY

While district court review of class action settlements is normally deferential, certain circumstances demand heightened scrutiny.[5]  Because each circumstance presents itself in this case, the Court should review the Settlement Agreement with heightened scrutiny.

### A.   Heightened  Scrutiny Applies to this Pre-Certification Settlement

In this Circuit, "[s]ettlements that take place prior to formal class certification require a higher standard of fairness."[6]  Heightened review of such settlements is necessary because "a court asked to certify a settlement class will lack the opportunity, present when a case is litigated, to adjust the class, informed by the proceedings as they unfold."[7]  Further, the risk of "collusion, individual settlements, buy-offs . . . , and other abuses" is greater in the context of pre-certification settlements because a court has "less information about the class" than it would if the parties engaged in discovery relating to certification issues and the merits of the case.[8]  The incentives for the negotiators to pursue their own self-interest and that of certain class members are implicit in the circumstances and can influence the result of the negotiations without any explicit expression or secret cabals."[9]

Here, the Negotiating Parties reached the Settlement Agreement within a very short period of time after the alleged unlawful conduct occurred and the Original Complaint was filed. The parties engaged in no discovery before reaching the Settlement Agreement, depriving the Court and the Plaintiffs to determine the full extent of Defendants' alleged misconduct and an opportunity to adjust the class as the litigation unfolds.  This is particularly problematic in this case, as the Complaint alleges such wide-ranging and legally-distinct violations of Federal, and

---

[5]   *See, e.g. id.* at 625.*Id.*
[6]   *Molski v. Gleich,* 318 F. 3d 937, 953 (9th Cir. 2003).
[7]   *Amchem Prod. V. Windsor,* 521 U.S. 591, 620, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). *See also Narouz v. Charter Comms., LLC,* 591 F.3d 1261, 1266 (9TH Cir. 2010).
[8]   *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.,* 55 F 3d 768, 787 (3d Cir. 1995).
[9]   *Staton V. Boeing Co.,*  327 F. 3d 938, 960 (9th Cir. 2003).

California law claims, which in any event, discovery is necessary to fully understand the nature of the unlawful conduct and potential remedies available to the Class.  Because they reached  the Settlement Agreement so early in this case, the Negotiating Parties have abdicated their responsibility to develop any of the factual or legal issues relevant to these claims.  And the risks of collusion, individual settlement, buy-offs, and other abuses are inherent in this pre-certification Settlement Agreement.  Accordingly, the court should review this Settlement Agreement with heightened scrutiny.

### B.   Heightened Scrutiny Applies to this Non-Monetary Settlement Agreement

District courts should apply heightened scrutiny in deciding whether to approve settlements where class members receive either no benefit or only non-monetary relief, in order to ensure class members receive an actual benefit and not an illusory one.  It is because of the danger that class members will release valuable claims in exchange for virtually valueless non-monetary relief that *cy pres* settlements are disfavored.  While *cy pres* settlements are permitted in some limited circumstances, the Ninth Circuit has remarked that "it seems somewhat distasteful to allow a corporation to fulfill its legal and equitable obligations through tax-deductible donations to third parties."[10]

*Cy pres* settlements present special problems because they not only alter the class members' substantive rights, they do so while circumventing individualized proof requirements. [11]  Specifically, *cy pres* settlements may "stray far from the next best use for undistributed funds and turn courts into a grant-giving institution."  As a result, such settlements often benefit the defendant or class counsel more than the class members, creating the appearance of impropriety. [12]

The Settlement Agreement at issue in this case poses the risk of turning this Court into a "grant-giving institution."  The Class Administrator can only disburse the fund by the mutual agreement of the Negotiating Parties.  In the event of any disagreement, the parties must seek the

---

[10]   *Molski*, 318 F.3d at 954.
[11]   *Id.*
[12]   *S.E.C. V. Bear, Stearns & Co. Inc.*, 626 F. Supp.2d 402 (S.D.N.Y.2009).

Court's intervention to resolve the dispute, forcing this Court into the role of non-profit internet privacy advocate.  Because the Settlement Agreement does not provide any benefit to class Members, including monetary benefit, there is also a substantial likelihood that the Settlement Agreement benefits Defendants and Class Counsel more than the Class Members.  In exchange for the Class Members releasing their valuable legal claims, Defendants receive the tax benefits of a charitable donation and the public relations benefit of appearing responsive to its users' complaints.  Class Members receive nothing.

The "clear sailing" feature of the Settlement Agreement allows Class Counsel to collect a fee equal to 25% of the Fund without objection from Defendants.[13]  Again, Class Members receive nothing while Class Counsel takes $806,250.00 for their little work between the complaint filings and the settlement of the Class claims.  These figures illustrate Class Counsel's windfall as compared to Class Members' non-recovery.

Finally, the Settlement Agreement creates the appearance of impropriety: Defendants donate a tax-deductible pittance to as-yet-unnamed organizations to discharge the claims of *substantially all their users* while Class counsel takes 25% of the Fund for facilitating the release of all claims.  The incongruity is stark.  Because the Negotiating Parties reached the Settlement Agreement before certification, and because it provides no benefit to the class members, including monetary relief, the Court should review the Settlement Agreement with heightened scrutiny.

## V.    ARGUMENTS IN OPPOSITION TO THE SETTLEMENT AGREEMENT AND SUGGESTED IMPROVEMENTS

When the Court looks beyond the Negotiating Parties' characterizations of the Settlement Agreement to review its actual terms, the court will find the Settlement Agreement's deficiencies render it unfair, inadequate, and unreasonable.  Specifically, the Settlement Agreement fails to fully designate the fund Recipients who will receive the bulk of the $3.225 million Fund, affords Defendants unfettered discretion in establishing measures to correct its own improper conduct

---

[13] SA.

and curtail further privacy breaches, requires Class Members to release their claims before Defendants are obligated to perform any benefits or remedial action, has an overbroad Class definition, and finally, provides no direct benefits for the Class Members. For the reasons detailed below, the Court should withhold approval of the Settlement Agreement and require the Negotiating Parties to modify the Settlement Agreement to rectify its deficiencies.

## A. The Settlement Agreement is Unfair, Inadequate, and Unreasonable Because It Failed to Fully Designate the Fund Recipients.

The failure of the Settlement Agreement to identify and determine the Fund Recipients is a fatal defect as it renders the Settlement Agreement fundamentally unfair, inadequate, and unreasonable. Cannata therefore respectfully requests that the Court deny final approval of the Settlement Agreement and require the parties to modify the Settlement Agreement to cure its inadequacies and allow the Class and the Court review of and approval of the *cy pres* recipient.

### 1. *The Negotiating Parties have Not Carried their Burden to Prove the Fairness of the* Cy Pres *Remedy*

The burden of proving that a *cy pres* recipient is acceptable rests on the settling parties.[14] The settling parties must prove, *inter alia,* that *cy pres* recipients have a substantial record of service, that the funds "adequately target the plaintiff class," and that there is "adequate supervision over distribution."[15]

Here, the Negotiating Parties have failed to meet this standard because the Settlement Agreement does not fully identify the Fund Recipients. The Settlement Agreement instead purports to disburse the Fund to a few organizations focused on Internet privacy policy or privacy education. But there is no guarantee yet that the Negotiating Parties will actually designate Fund Recipients that meet the service requirement. Neither does the Settlement Agreement adequately target the Class. On the contrary, it bestows unfettered discretion on the Class Counsel to designate recipients who may or may not in fact have the necessary focus.

---

[14] *Six Mexican Workers v. Arizona Citrus Growers,* 904 F.2d 1301, 1307 (9th Cir. 1990).
[15] *Id.* at 1308-9.

There is simply no guarantee that the Fund Recipients—whoever they ultimately may be—will target the Class.  Furthermore, an adequate oversight procedure is conspicuously absent from the Settlement Agreement.  Upon approval, Defendants can walk away from the courthouse confident that it can ignore the legitimate claims of the Class Members with impunity.

### 2. The Settlement Agreement is Unfair, Inadequate, and Unreasonable because it Prevents the Court from Discharging its Fiduciary duty to Class Members

District courts owe a fiduciary duty to class members when class counsel derives their fee from a common settlement fund.[16]  The Court stands as a fiduciary in this case because the Settlement Agreement provides that Class Counsel may take up to 25% of the Fund as their fee.  Yet the Court cannot discharge its fiduciary duty because the Settlement Agreement leaves the future determination of the Fund recipients solely to the discretion of the Class Counsel.  The failure to designate the Fund Recipients renders the Court unable to exercise its fiduciary duty to ensure that the settlement, and the Fund created thereunder, will in fact benefit all Class Members.

The Court must identify the Fund Recipients **before** the Court enters the Final Order and Judgment.  This is the only way the Court will be able to discharge its duty to review the Fund Recipients and properly determine that the Fund will or will not benefit the Class Members.

### 3. The Settlement Agreement is Unfair, Inadequate, and Unreasonable Because it Disincentivizes Class Counsel from Objecting

Another troubling fact is that the Class Counsel's interests are now more closely aligned with Defendants' than with those of the Class Members.  District court review of class action settlements exists precisely to police this misalignment, which is ripe for abuse.  "The primary concern of [district court review] is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties."[17]

---

[16]  *In re Washington Public Power Supply System Securities Litigation*, 19 F.3d 1291, 1302 (9th Cir. 1994).
[17]  *Officers for Justice*, 688 F.2d at 624.

9

In this case, while the Class Members receive no direct benefit, Class Counsel receives its 25% cut of the Fund if the Court approves the Settlement Agreement. The Settlement Agreement terminates if the Court vacates, modifies, or reverses it, which would send the Negotiating Parties back to the settlement drawing board. The Settlement Agreement therefore incentivizes Class Counsel to quash legitimate objections both now and after the Final Order and Judgment.

Accordingly, the Court should fully identify the Fund Recipients and the amounts to be disbursed to each before the Court grants final approval to the Settlement Agreement. This would allow the Court to discharge its fiduciary duty to the Class Members by guaranteeing that the Fund will actually benefit Class Members.

**B. The Court Should Require the Negotiating Parties to Amend the Settlement Agreement to Actually Benefit the Class Members Through Substantive and Specific Improvements in Privacy controls and Specific Designation of Privacy Education**

Although Defendants promise to improve and correct its actions and to provide education, the Settlement Agreement provides no obligation for Defendants to provide any specific improvements or privacy education related to their operations and conduct, no standards for such improvements or education, and any oversight or consequences relating to such improvements and education. In addition the provisions will remain in effect only until June 30, 2013. These failures render the Settlement Agreement unfair, inadequate, and unreasonable. The Settlement Agreement simply does not benefit the Class Members. Cannata therefore respectfully requests that the Court withhold final approval of the Settlement Agreement and require the Negotiating Parties to modify the Settlement agreement to specify substantive improvements.

In addition to the creating the Fund, the Settlement Agreement requires Defendants to perform vague promises that lack any specific obligation of Defendants and therefore lack any substantive force and do not discharge the Negotiating Parties' burden to prove that the

Settlement Agreement benefits Class Members.  The Settlement Agreement neither defines nor provides details regarding what each Defendant will be compelled to provide.  This leaves Defendants absolute discretion.  Defendants, the wrongdoer here and competitors in the cutthroat arena of website services, has no incentive to highlight its shortcomings and provide proper services beyond June 30, 2013.  Defendants are much more likely to use the class relief as a marketing tool rather than make it an honest remedy for Class Members, then after June 30, 2013 go back to the same improper conduct that they have been cited for in this action.

### C.  The Settlement Agreement Provides No Benefit to Members of the Class

The Settlement Agreements fail to obligate Defendants to implement any permanent substantive improvements to its website services for the Class in exchange for the Release and Dismissal.  Allowing Defendants unfettered discretion to decide its obligations, especially after June 30, 2013, under the Settlement Agreement do not provide Class Members with any relief in exchange for forever releasing their rights to recover.

In addition, promising to disburse the Fund to an unnamed *cy pres* recipient does not obligate Defendants to provide any benefit to the Class, as there is no assurance the Fund Recipient eventually named provide any services that benefit the Class.

Finally, providing to Class Counsel the information relevant to Defendant's alleged misconduct is not relief for the Class Members.  Defendants, under basic discovery rules and judicial rules of fairness, would have been required to provide such discovery in any event.

For the foregoing reasons, none of the purported "relief" obligates Dfendants to provide any real relief or benefits to the Class Members in exchange for the Class Members extinguishing claims against Defendants for its egregious breach.   Therefore, the Court should withhold final approval of the Settlement Agreement and require the Negotiating Parties to modify the Settlement Agreement to rectify this deficiency.

## VI.   CONCLUSION

The Settlement Agreement is substantively deficient and is inherently unfair, inadequate, and unreasonable.  Therefore, the Court should withhold final approval of the Settlement Agreement until the Negotiating Parties modify the Settlement Agreement to address the deficiencies described above.

Dated:  May 12, 2011                              Respectfully submitted,


Sam P. Cannata, Pro Se Objector
9555 Vista Way, Suite 200
Garfield Heights, Ohio 44125
(216) 438-5091 – phone
(216) 587-0900 – fax
*samcannata@cannataphillipslaw.com*

12

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that copies of the foregoing were served via Federal Express Priority Overnight, to the following on this 12th day of May, 2011:

Clerk of the United States District Court
For the Central District of California
312 North Spring Street
Los Angeles, CA 90012

Flash Cookie Settlement
Claims Administrator
c/o Rosenthal & Company LLC
75 Rowland Way, Ste 250
Novato CA 94945

The undersigned hereby certifies that copies of the foregoing were served by ordinary, first class U.S. mail, postage prepaid to the following on this 12th day of May, 2011:

Josh M Kantrow
Wilson Elser Moskowitz Edelman & Dicker
55 West Monroe Street, Ste. 3800
Chicago, IL 60603

Scott A. Kamber
Kamberlaw, LLC
100 Wall Street, 23rd Floor
New York, NY 10005

Michael G. Rhodes
Cooley LLP
101 California Street, 5th Floor
San Francisco, CA 94111

Avi Kreitenberg
Kamberlaw, LLP
1180 South Beverly, Ste. 601
Los Angeles, CA 90035

Michael G. Page
Durie Tangri LLP
217 Leidesdorff Street
San Francisco, CA 94111

Sam P. Cannata

13